AUBREY JACK THOMPSON V. THE STATE.

No. 22035.  Delivered May 13, 1942.
Rehearing Denied June 10, 1942.

The opinion states the case.

*J. P. Moseley,* of Ennis, for appellant.

*Forrester Hancock,* Criminal District Attorney, and *F. L. Wilson,* Assistant Criminal District Attorney, both of Waxahachie, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

The conviction is for the offense of aggravated assault and battery. The punishment assessed is confinement in the county jail for a period of 30 days and a fine of $500.00.

The only question presented for review is the sufficiency of the evidence to support the conviction. The State's testimony, briefly stated, shows that on Sunday morning, June 8, 1941, W. J. Stewart, appellant, and the deceased went to the east part of the town of Ennis, where they purchased a gallon of "choc beer" which they drank. They then obtained from some one a half pint of corn whisky and proceeded to the home of the deceased for dinner. After dinner, they went back to town and purchased two half pints of whisky. After drinking part of it, they went back to the home of the deceased. Appellant placed a pint bottle of whisky on the ice box which the deceased picked up and drank.

Appellant and deceased were scuffling, and appellant picked up the deceased and tried to put him in the sink, and then set him down on the floor where water had been spilled. They then went into the bed room and continued scuffling. Then a witness who was in another room, the kitchen, heard a sound like a lick, and he went into the bed room and appellant was pulling the deceased up on the bed, and he thought the deceased was dead. It seemed that the deceased had a bruise on the right side of his head, and a witness saw appellant withdrawing his fist from the deceased. The deceased was heavy and strong and used to hard work; he seemed to have the habit of getting drunk every other Saturday night. When deceased drank the whisky on the ice box, appellant seemed to get mad and picked up a chair and cursed the deceased and said: "If you don't give me more whiskey, I am going to wreck it." The son of the deceased seemed to have seen only the last portion of this scuffling, in which he stated that the appellant and deceased were sitting on the bed, and appellant struck his father on the Adam's apple, and his father fell over on the bed; the two parties were sitting together, and appellant got up and struck the deceased, who never tried to touch appellant;

appellant hit him in the throat, and the deceased fell over on the bed and died there.

The deceased was 48 years old, 5 feet 8 1/2 or 9 inches tall, weighed 160 pounds, worked hard at manual labor, and his brother testified he had never heard of him having high blood pressure. The appellant did not go to his home after the deceased was killed, but drove around with some companions, and then went to a tourist camp with his companions, drank some corn whisky, and was there arrested by the officers.

Dr. Story performed an autopsy on the deceased, and testified that he died from a hemorrhage of the brain, which could have been caused by a blow on the throat with one's fist. This doctor said that blood pressure of 150 over 94 would be a little over normal, but he did not think alcohol would increase this blood pressure.

Dr. A. L. Thomas testified that he assisted in an autopsy on the body of deceased, and in his opinion this death was caused by a blow about the face; there were evidences of an abrasion on the right malar eminence, and one over the shoulder blade; neither one of these would have affected the brain. Alcohol causes the heart to beat faster, but it is not a stimulant, it is a depressant. If a man drank a long time it might cause some degeneration of the blood vessels; they might be less able to stand the pressure of the blood as it flows through the brain.

Dr. Chapman also assisted in the autopsy. He testified that it was possible to inflict a mortal wound by striking a man a blow in the neck; such would be calculated to cause a rupture of an artery in the head. The indicated blood pressure of 150 over 94 would seem to be normal for the deceased, with no harmful effect on the deceased's body. The drinking of whisky for four years would not in his opinion have had any effect on such blood pressure.

The appellant offered the testimony of Dr. Jones, who testified that the deceased's indicated blood pressure was above normal; that his drinking would increase such pressure, render the arteries more brittle, and under severe exertion might cause a rupture of the arteries in the brain and result in death. That a blow on the neck could have caused death, but such blow

would show some discoloration after death. If the blow was great enough it could cause the hemorrhage in the artery.

Art. 1138, P. C. defines an assault as:

"The use of any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used, is an assault and battery. Any attempt to commit a battery, or any threatening gesture showing in itself or by words accompanying it, an immediate intention, coupled with an ability to commit a battery, is an assault."

Art. 1139, P. C. says:

"When an injury is caused by violence to the person, the intent to injure is presumed, and it rests with the person inflicting the injury to show the accident or innocent intention. * * *"

We then quote from Art. 1147, P. C. as follows:

"An assault or battery becomes aggravated when committed under any of the following circumstances: * * *

"7. When a serious bodily injury is inflicted upon the person assaulted."

The trial court charged the jury upon the law relative to murder both with and without malice, and upon an aggravated assault and a simple assault; upon the law of circumstantial evidence, and a death from natural causes.

It is to be noted that appellant did not himself testify. The unlawful violence is shown by all the eye-witnesses, and no effort is made to show its innocent or accidental intent other than a death from natural causes, and under Art. 1147, Sec. 7, supra, if a serious injury is caused by such assault, then the same becomes aggravated. We think that death would be such a serious injury. There were four doctors placed upon the stand, three of whom participated in the autopsy upon the deceased; they each testified that a blow upon the neck at or near the place indicated by the witnesses could produce death, and under the circumstances and the proof offered, we think the jury were justified in finding appellant guilty of an assault, and that such produced the death of the deceased, and that such was a serious injury. See Bean v. State, 25 Tex. Cr. App. 346.

Evidently the jury did not think appellant intended to kill the deceased, and, therefore, acquitted him of murder, but they also thought that he did intend to commit an assault upon him, and that such an assault inflicted serious bodily injury upon the person of the assaulted party.

On the issue of aggravated assault the court charged the jury as follows:

"You are further instructed that if you believe from the evidence beyond a reasonable doubt that the defendant by the use of unlawful violence upon the person of the deceased, with the intent to injure him, inflicted serious bodily injury upon the said deceased by striking and beating him with his fists, then you will find the defendant guilty of an aggravated assault, and assess his punishment at a fine of not less than $25.00 nor more than $1,000.00; or by imprisonment in the county jail of not less than one month nor more than two years, or by both such fine and imprisonment; but if you do not so believe, or have a reasonable doubt thereof, then you will acquit the defendant of aggravated assault."

If more specific instructions were desired they should have been requested, as was done in Leonard v. State, 115 Tex. Cr. R. 234, 29 S. W. (2d) 750, as shown in the opinion on rehearing in that case, or objections to the charge given should have been sufficiently specific to call attention to what was desired. It will be noted that in the present case the court required the jury to find beyond a reasonable doubt that appellant inflicted serious bodily injury upon deceased by striking and beating him with appellant's fists, before a conviction for aggravated assault could be had. In other words, that the blows with the fist caused a serious injury. The jury has settled that fact issue in favor of the State. We cannot substitute our judgment for that of the jury. That an aggravated assault may be committed with the fist where the assault is with premeditated design and calculated to inflict great bodily injury is held in Kelley v. State, 12 Tex. App. 245. See also State v. Webb, 182 S. W. 975, a Missouri case. Likewise, if the assault be committed with the fist and serious bodily injury results from the blow itself the offense becomes aggravated. If death results from the blow, of course, the injury is serious. It is different where the blow with the fist is supplemented by an intervening cause such as striking the head on some object, and where the serious injury or death results from the intervening

cause, and not the blow. This principle is illustrated in Calvert v. State, 75 Tex. Cr. R. 229; Flournoy v. State, 124 Tex. Cr. R. 395, 63 S. W. (2d) 558. The issue was also raised by the evidence in Leonard v. State, 115 Tex. Cr. R. 234, 29 S. W. (2d) 750, but there the special charges given fairly presented the issue of intervening cause, and the jury found against it.

Believing the finding of the jury that the blow with appellant's fist inflicted serious bodily injury upon deceased is supported by the evidence, the judgment is affirmed.

## ON MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant insists that, under the facts, he was guilty of no higher grade of offense than simple assault, and that we erred in concluding to the contrary.

It will be remembered that the charge against appellant was that of murder. His conviction for aggravated assault resulted from and under such accusation and trial for that offense.

Under a charge of murder, the issue of aggravated assault is raised when the instrument with which the injury resulting in death is not a deadly weapon per se, and when, in addition thereto, the evidence raises the issue of a lack of intent on the part of the accused to kill. Barnett v. State, No. 22,044, decided June 3rd, 1942 (Page 249 of this volume); Miller v. State, 13 S. W. (2d) 865, 112 Tex. Cr. R. 125; Bookman v. State, 16 S. W. (2d) 123, 112 Tex. Cr. R. 233; Johnson v. State, 68 S. W. (2d) 202, 125 Tex. Cr. R. 381.

The facts bring this case within the operation of the rule stated, for here the instrument used, being appellant's fist, was not a deadly weapon per se, and the use thereof was sufficient to show a lack of intent on his part to kill.

The undisputed evidence shows that death resulted from the injury inflicted by and with the appellant's fist. There was no intervening cause such as existed in the Flournoy and Calvert cases, cited in our original opinion.

We remain convinced that the case was correctly disposed of originally. The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.