### B. M. GOLDMAN V. THE STATE.

No. 23542. Delivered January 15, 1947.

*R. A. Richardson,* of Kountze, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the murder with malice of Marlton M. Williams, and given a penalty of ten years in the penitentiary.

The facts show that appellant and deceased were brothers-in-law, and probably there had been some previous hard feeling between appellant and the elder Williams, who was the father of appellant's wife and also the ,father of the deceased. On the day of the killing (August 25, 1945) appellant's wife and two of their young children, as well as a 13-year-old boy of appellant's wife by a former marriage, Arthur Eugene Stimits, were at the home of her father, T. F. Williams, and with him there lived the deceased. Sometime near dark, appellant appeared on the scene for the purpose of taking his wife and the three children home, he living at LaPorte, quite a distance away. Appellant was carrying a hunting or fishing knife, with a four-inch blade, in a scabbard strapped to his side. Eventually some words were exchanged between appellant and the father which seemed to anger the deceased, who entered into the argument, but these ruffled feelings seemed to have been smothed over. Appellant's wife finally came out in the yard where this 13-year-old son of hers was sitting on a cot next to the deceased, and told this boy to come on and go home with them. The boy then said he was not going with her but was going to stay with his grandparents and uncle, the deceased. The grandfather, when requested by the mother to make the boy go, refused to have any voice in the matter. The boy got behind the uncle, at which time the mother slapped the deceased, who arose and a struggle ensued, the defense contending that the deceased was striking his sister, and the State's witnesses contending that he was merely holding her hands. Eventually she fell, and the father then intervened and attempted to stop the difficulty. However, the daughter arose and the scuffle was renewed, at which time the appellant, who was in the house, came out and producing his knife, practically disemboweled Marlton Williams, who soon expired from a wound in his abdomen about ten inches long from which his intestines protruded, the cut going into the liver.

There were eight bills of exception in the record, the main burden thereof relating to the trial court's charge to the jury.

The instrument used in this killing is described as a hunting or fishing knife with a four-inch blade, which appellant said he used in his business, he being a commercial fisherman; that he carried it in a scabbard at his side. Appellant testified, among other things, as follows:

"I didn't want any trouble. I hadn't come there for trouble. I hadn't anticipated any trouble. I didn't wear that knife for any trouble. * * * I did not attempt to strike him (deceased) more than one time at the time I cut him. I just merely meant to get him loose from my wife."

We have heretofore held that a knife such as the one here present was not a deadly weapon per se. See Briscoe v. State, 56 S. W. (2d) 458, 122 Tex. Cr. R. 491; Shannon v. State, 36 S. W. (2d) 521; 117 Tex. Cr. R. 429; Branch's Ann. Tex. P. C. p. 934, sec. 1587, and cases there cited. It has been further held that if the weapon used was not per se a deadly weapon, it was necessary for the jury to find under proper instructions that the accused had an intent to kill at the time he struck with the knife. See Bell v. State, 189 S. W. (2d) 1022; Sullivan v. State, 171 S. W. (2d) 353; Wright v. State, 143 S. W. (2d) 949. Although the specific intent to kill may be found by the jury from the mode and manner of the use of an instrument not per se a deadly weapon (Ammann v. State, 145 Tex. Cr. R. 34, 165 S. W. (2d) 744), nevertheless, the trial court should submit to the jury an instruction requiring them to find such intent to kill beyond a reasonable doubt before a conviction for murder could be had. See Bell v. State, 189 S. W. (2d) 1022, and cases there cited.

This matter was directly called to the trial court's attention in two special requested charges, both of which were refused, and they are made the subject of bills of exception.

Again, under the light of appellant's testimony above quoted, and taking into consideration the instrument used in this homicide, we think the trial court should have responded to appellant's request to charge on the law of aggravated assault as shown by his Requested Instruction No. 4. This the trial court refused to do, as is shown by Bill of Exceptions No. 2. See Miller v. State, 112 Tex. Cr. R. 125, 13 S. W. (2d) 865; Shannon v. State, 117 Tex. Cr. R. 429, 36 S. W. (2d) 521; Briscoe v. State, 122 Tex. Cr. R. 491, 56 S. W. (2d) 458; Bell v. State, 189 S. W.

(2d) 1022; Gomez v. State, 34 S. W. (2d) 607; Thompson v. State, 162 S. W. (2d) 728, (on rehearing) ; Bookman v. State, 112 Tex. Cr. R. 238, 16 S. W. (2d) 123.

There are further matters raised herein not necessary to be written on as they will doubtless not occur upon a retrial hereof.

For the reasons in the charge above pointed out, the judgment is reversed and the cause remanded.