Thomas Louell MATHESON, Appellant,

v.

The STATE of Texas, Appellee.

No. 45834.

Court of Criminal Appeals of Texas.

April 17, 1974.

See also, Tex.Cr.App., 492 S.W.2d 273.

Donald B. Friedman, Texarkana, for appellant.

Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is a belated or out-of-time appeal. The conviction was for murder without malice aforethought wherein the punishment was assessed by the jury at four (4) years' confinement in the Texas Department of Corrections.

The indictment charged in part that the appellant "did then and there unlawfully kill Thomas Edward Matheson by hitting the said Thomas Edward Matheson and shaking the said Thomas Edward Matheson with his hands. . . ."

At the outset we shall consider the appellant's grounds of error that the court failed to charge the jury, despite timely presented written objections, that intent to kill is an essential element of murder, and that if appellant lacked such intent he could not be convicted of murder, and of the court's failure to charge on the issue of aggravated assault.

The deceased was the appellant's eleven month old son, who was near death when the appellant and his wife brought the child to the hospital at Texarkana on the night of June 22, 1969. The doctors described the cause of death as brain hemorrhage due to a recent blow to the head.[1] At the time of the trial the deceased's mother and appellant's former wife testified that on the occasion in question they were living at Maud in Bowie County, although in the process of moving across the border into Arkansas. She explained that after they had retired for the night the deceased began to cry and that she got up and succeeded in getting the deceased child quiet; that subsequently, the deceased began crying again and the appellant went to the deceased's room and he stopped crying, but began again a short time later. She related that appellant went a second time

---

1. One doctor testified that the death was the result of extensive subdural hemorrhage with contusions of the left occipital lobe, and increased intracranial pressure, etc.

to the deceased's room and later came out saying, "Oh, my God, I hope I haven't hurt him," and stated the child had passed out when he had been shaken. The deceased child was then rushed to the hospital where he died several days later.

Testifying in his own behalf, appellant related that the first time he went to the deceased's room the child "hushed" as he appeared in the doorway, and that he laid the child back on the mattress. The second time, he testified he slapped the child, but not hard, on the left cheek to stop the crying, and then "swatted" him on his "bottom a couple of times," and when the crying continued, he placed his hands under the child's arms and began to shake him when the child appeared to pass out. He testified that he never intended to hurt the child in any way.

There was undisputed testimony developed during the State's case as well as appellant's case which showed that a week or so before the night in question the child fell off a cot at a nursery, resulting in a bruise to his head, and that on other occasions the child fell backwards while trying to walk.[2] There was also testimony that when the child was taken to the hospital after the infliction of the fatal wounds it was discovered the child was anemic, which would cause him to bruise more easily.

■ It is appellant's contention that his testimony raised the issue of lack of intent to kill and the issue of aggravated assault and the court failed to charge on such issues, despite his written objections. We agree.

■ It is well established that where death occurs without the use of a deadly weapon and where there is evidence that there was no intention on the part of the accused to inflict mortal injuries, the jury must be charged on the element of intent

to kill, and the jury must find that intent before it can convict the accused of murder. Stroud v. State, 113 Tex.Cr.R. 621, 24 S.W.2d 52 (1930); Briscoe v. State, 122 Tex.Cr.R. 491, 56 S.W.2d 458 (1933); Pope v. State, 126 Tex.Cr.R. 395, 72 S.W.2d 278 (1934); Sullivan v. State, 146 Tex.Cr.R. 79, 171 S.W.2d 353 (1943); Shannon v. State, 117 Tex.Cr.R. 429, 36 S.W.2d 521 (1931); Goldman v. State, 150 Tex.Cr.R. 24, 198 S.W.2d 895 (1947); Baylor v. State, 151 Tex.Cr.R. 365, 208 S.W.2d 558 (1948).

In 29 Tex.Jur.2d, Homicide, Sec. 277, p. 507, it is written:

"In a murder case in which a lack of specific intent to kill is raised by the evidence, and where the killing was committed with an instrument not per se deadly, the instructions should require, for conviction, a determination that the defendant had such intent. . . ."

In Pope v. State, supra, this court wrote:

"Appellant timely and properly excepted to the charge of the court for its failure to submit an affirmative instruction to the jury to acquit him of murder if the jury entertained a reasonable doubt as to whether he intended to kill deceased. The weapon used by appellant was a stick of wood about two feet long. Under the decisions of this court, it was not per se a deadly weapon. Briscoe v. State (Tex.Cr.App.), [122 Tex.Cr.R. 491], 56 S.W.2d 458, and authorities cited. The weapon not being a deadly one per se, and appellant having testified, in effect, that he had no intention of killing deceased, but merely struck him for the purpose of punishing him for the whipping deceased had given him, the court should have affirmatively instructed the jury to acquit appellant of murder if they entertained a reasonable doubt as to whether he intended to kill deceased. Briscoe v. State, supra.

2. Appellant's wife testified that the child's head hit a braided rug on the floor on this occasion, while appellant recalled the child's head hit the floor.

"The judgment is reversed, and the cause remanded."

■ It is further well established that where injuries causing death are inflicted without the use of a weapon which is deadly per se and where the evidence raises the issue of lack of intent to kill, it is then incumbent upon the court to charge the jury on aggravated assault, particularly where requested or where the charge is properly objected to for failure to include such instruction. Black v. State, 137 Tex. Cr.R. 516, 132 S.W.2d 267 (1939); Shannon v. State, supra; Goldman v. State, supra.

In reversing the conviction in Moree v. State, 147 Tex.Cr.R. 564, 183 S.W.2d 166 (1944), this court said:

"An exception was reserved to the failure of the trial court to submit the issue of aggravated assault. The rule now appears to be that aggravated assault is deemed to be raised in a murder case when the instrument with which the murder is inflicted is not a deadly weapon, per se, or one which, in the manner of its use, is not ordinarily calculated to produce death, and when, in addition thereto, the evidence raises the issue of a lack of intent to kill. Barnett v. State, 144 Tex.Cr.R. 249, 162 S.W.2d 411–416; Thompson v. State, 144 Tex.Cr.R. 321, 162 S.W.2d 728, and authorities there cited."

More recently, this court in Trotter v. State, 170 Tex.Cr.R. 495, 341 S.W.2d 923 (1960), said:

"Where the weapon used is not per se a deadly weapon, the intent to kill is a question for the jury and the court should charge on aggravated assault. Corona v. State, 108 Tex.Cr.R. 317, 300 S.W. 79; Shannon v. State, 117 Tex.Cr. R. 429, 36 S.W.2d 521; Briscoe v. State, 122 Tex.Cr.R. 491, 56 S.W.2d 458.

"The rule applicable to charges on the theory of no intent to kill is stated in 4 Branch 2d 196, Sec. 1853, as follows:

" 'If there is testimony which, if true, would render it doubtful whether the accused intended to kill when he assaulted the alleged injured party, the court should charge on this theory of aggravated assault.' (citing cases)"

For the reasons stated, the judgment is reversed and the cause remanded.