**Guadalupe LERMA & Salustrio Lerma, Appellants,**

v.

**The STATE of Texas, Appellee.**

Nos. 62537, 62981.

Court of Criminal Appeals of Texas, Panel No. 1.

Nov. 24, 1982.

On Rehearing Nov. 21, 1984.

Logene L. Foster, Sugar Land, for Guadalupe.

Edward M. Carmona, Houston, for Salustrio.

Robert Huttash, State's Atty. and Alfred Walker, Asst., State's Atty., Austin, for the State.

Before ROBERTS, TOM G. DAVIS and W.C. DAVIS, JJ.

## OPINION

ROBERTS, Judge.

These appellants, who are brothers, were charged in a single indictment with the offense of murder. They were represented by the same attorney at their joint trial. The jury found each guilty of the lesser included offense of involuntary manslaughter and assessed each a punishment of confinement for ten years.

In his first and second grounds of error, Guadalupe Lerma challenges the sufficiency of the evidence. Guadalupe had been working with his brother, Salustrio, and several other men in Katy on March 25, 1978. Late that afternoon they drove back to Richmond where they lived. On the way they dropped off Johnny Garcia and the other men in Rosenberg. Garcia was dropped off near a bar known as Pat's Place. He asked the appellant to return in about two hours to pick him up.

Guadalupe and Salustrio continued on to Richmond where they picked up Beatrice Davila, a friend of Guadalupe. The three bought some beer, drove around awhile, then stopped in the country to shoot a shotgun owned by Salustrio. They then drove back to Rosenberg and stopped in front of Pat's Place. The three got out of the van in which they were riding and walked toward the bar. As they approached the door, Pablo Vasquez and several other men were exiting. An argument began between Vasquez and the Lerma brothers. Vasquez brandished a knife and harsh words were exchanged, but the episode ended when the Lerma brothers returned to the van.

The Lerma brothers and Davila drove off, but very quickly turned around in a nearby alley. They stopped in front of a neighboring bar called La Hacienda. Davila got out of the van and walked to the door of La Hacienda. According to Guadalupe, they were trying to find Johnny Garcia. They sent Davila to look for him because Vasquez and his companions would not bother her. Just as Davila got to the door of the bar, Vasquez' brother, Johnny, came out. Davila turned around and ran back to the van. The State's version of what happened next and the appellants' version differed markedly.

According to the State's evidence, Pablo Vasquez had seen the appellant's van parked outside La Hacienda. When he saw his brother start toward the door of the bar he yelled and tried to stop Johnny, but Johnny continued outside. Pablo followed him and saw that the van was moving very slowly. He then saw the van's side door open and saw the barrel of a gun sticking through the opening. As he ran behind a car, he tripped and fell. As he fell he heard two shots. The door of the van then closed and the van drove off. Pablo then saw that his brother had been shot once. Johnny Vasquez died from the single shotgun wound.

According to the appellants' version of the facts, Davila was pursued back to the van by Johnny Vasquez and several other men. She fell just as she got to the van, but was able to get in. The men were trying to get inside the van, but Davila and Guadalupe had their doors locked. Salustrio, who was sitting in the back of the van, failed to lock his door. Guadalupe tried to

drive off, but could not because the men had surrounded the van. Meanwhile, Salustrio had loaded the shotgun which he kept on a gun rack in the back of the van. Guadalupe told him to shoot into the air to scare the men away so that they could drive off. When one of the men outside the van opened the side door, Salustrio fired one shot into the air. One of the men outside then grabbed the barrel of the shotgun and attempted to take it out of Salustrio's hands. The gun discharged a second time. At that point the men outside scattered. The three in the van then drove away. They did not know until their arrest several hours later that someone had been shot.

The State's theory of the case was that Guadalupe was guilty as a party. V.T.C.A., Penal Code, Section 7.01, provides:

"(a) A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

"(b) Each party to an offense may be charged with commission of the offense."

V.T.C.A., Penal Code, Section 7.02, provides:

"(a) A person is criminally responsible for an offense committed by the conduct of another if:

\* \* \* \* \* \*

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense...."

The jury found Salustrio Lerma guilty of the offense of involuntary manslaughter. The charge required the jury to find that Salustrio recklessly caused the death of Johnny Vasquez by shooting him with a shotgun. Under the terms of V.T.C.A., Penal Code, Sections 7.01 and 7.02, Guadalupe could be found guilty of the offense of involuntary manslaughter as a party if the jury found that he solicited, encouraged, or directed Salustrio to commit the reckless act which caused the death of Johnny Vas-

quez and did so with the intent to promote or assist the commission of that reckless act.

Since Guadalupe's own testimony showed that he told Salustrio to shoot into the air to scare the men away, the jury could rationally find that the appellant was guilty as a party. The evidence is sufficient to support the conviction.

In his third ground of error, Guadalupe contends that the trial court erred in failing to continue the case so that separate counsel could be obtained for each of the Lerma brothers. He alleges that he pointed out to the court the potential conflict of interest present in this case, and that the court's duty at that point was either to determine whether the risk of conflict of interest was too remote to warrant separate counsel or to allow the co-defendants to obtain separate counsel.

In *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the United States Supreme Court explored the risks inherent in the representation of co-defendants and set forth standards for review when those risks were made known to the trial court. The Court held that when the possibility of inconsistent interests between co-defendants is brought home to the trial court, the court has an affirmative duty to assure that the co-defendants are not deprived of their right to the effective assistance of counsel. Once this duty arises, the trial court has an obligation either to see that the co-defendants are represented by separate counsel or to "take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." *Id.* at 484, 98 S.Ct. at 1178. Furthermore, the Court held that a defendant who has made an objection to joint representation need not show specific harm and prejudice. Reversal is automatic whenever a trial court improperly requires joint representation over timely objection.

Two years later the United States Supreme Court again took up the problem of conflict of interest. In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333

(1980), the Court resolved two issues specifically reserved in *Holloway*. First, the Court held that without a timely objection to joint representation, trial courts have no affirmative duty to inquire whether a conflict of interest exists. As the Court put it, "Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Id.* at 347, 100 S.Ct. at 1717. Second, the Court held that without a trial objection, *Holloway's* presumption of harm will not be applied. "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 100 S.Ct. at 1718.

With these standards in mind, we turn to the record of this case. On July 31, 1978, the day the jury was to be selected, the attorney for both the appellant and his brother, co-defendants in this case, filed a "Motion for Continuance." The motion stated:

"TO THE HONORABLE JUDGE OF SAID COURT:

"NOW COMES, SAL LERMA, JR., AND LUPE LERMA, Defendants herein, by and through their attorney of record, ROBERT NINO, and files this their MOTION FOR CONTINUANCE, and would show unto this Honorable Court, the following, to-wit:

I.

"That Defendant, LUPE LERMA, does not wish to be represented by the attorney of record, ROBERT NINO, and the fact that Defendant, LUPE LERMA does not wish to be represented by ROBERT NINO, will jeopardize the trial of this cause in that the Defendant, LUPE LERMA, might testify against Defendant, SAL LERMA, JR.

"This Motion for Continuance is not made for the purposes of delay or procrastination, but is made in the interest of seeing that full and essential justice is done in this cause.

"WHEREFORE, PREMISES CONSIDERED, Defendant and his attorney of record, pray that his Motion for Continuance be granted for the above reasons."

That same day the following took place:

"THE COURT: In Cause Number 10,-958–A, The State of Texas vs. Salustrio Lerma and Guadalupe Lerma, the Court has been presented with a Motion for Continuance as filed by the Defendant on this date, at 10:30 A.M. in the morning.

"Now then, the Court specifically finds that on June 20th, 1978, the Defendants appeared, as stated on the docket sheet, with their lawyer, Luis DeLeon, who is an employee of the law offices of Robert Nino and the Defendants were duly arraigned and their bond set. Now then, at that time, the Court made inquiry as to whether or not there was any conflict of interest and there was none expressed at that time and one lawyer was to represent both Defendants.

"The Court further finds that on June 8th, 1978 the Defendants appeared without their lawyers and were given a notice of trial setting and to make it abundantly clear to the Defendants that the case was set for trial, the Court not only checked the appropriate part of the notice of setting, but circled it and the Defendants' lawyer was again informed of the notice of trial setting on June 20th, 1978 when they appeared in court with their lawyer to be arraigned.

"Therefore, at this time the Court will overrule the Motion for Continuance as submitted.

"MR. NINO: Note our exception to that ruling, please.

\*　　\*　　\*　　\*　　\*　　\*

"MR. NINO: As far as Defendant Guadalupe Lerma, who does not wish my representation, he does not want me to represent him and in that regard, I don't want to be responsible for whatever Mr. Lerma might decide to do later on, being that he is forced to go forward with the

case despite my objections and we object as to the Defendant, Guadalupe Lerma.

"THE COURT: Well, you heard what I dictated into the record about what all happened since you have been indicted, haven't you, which is Guadalupe Lerma; you heard that, didn't you?

"GUADALUPE LERMA: Yes, sir.

"THE COURT: This is all true, isn't it?

"GUADALUPE LERMA: Yes, sir.

"THE COURT: Sir?

"MR. NINO: Do you want him to explain to you?

"GUADALUPE LERMA: Well, I would like for him to explain.

"THE COURT: Well, you remember when you came up here on June 9th— you came up here June 8th, didn't you?

"GUADALUPE LERMA: Yes, sir.

"THE COURT: And I gave you a piece of paper here on the settings and told you—and I told you that the case was set for trial on July 31st, didn't I?

"GUADALUPE LERMA: Yes, sir.

"THE COURT: And you told me that Mr. Nino and his offices were representing you?

"GUADALUPE LERMA: But I changed my mind, I don't want him to.

"THE COURT: I asked you if there was any conflict of interest and you said 'No' and I told you it was set for trial on July 31st and you signed this piece of paper. All that is true, isn't it?

"GUADALUPE LERMA: Yes, sir.

"THE COURT: And you come up here the day of the trial saying you don't want this lawyer and you have paid him money, haven't you?

"GUADALUPE LERMA: Yes, sir.

"THE COURT: Well, the Court has overruled your Motion for Continuance and the Court advises you to cooperate with your lawyer totally. Court is adjourned until 1:30."

The State argues that Guadalupe has failed to show the necessary predicate to *Holloway*. According to the State, this record contains "not a scratch of a pen about any conflict of interest." Although the "motion for continuance" does not contain the phrase "conflict of interest", it does specifically refer to the possibility that one co-defendant might testify against the other co-defendant.[1] There could hardly be a more obvious form of conflict of interest than to have one attorney representing both defendants in such a situation.

Furthermore, the record indicates that the trial court treated the motion, at least in part, as raising the possibility of conflict of interest. The judge specifically pointed out that he had inquired about the possible conflict of interest present in the case at the arraignment some six weeks before the trial date.[2] Thus, the State's argument that no one ever claimed that a conflict of interest existed in this case is simply not supported by the record. Certainly, the appellants' attorney could have developed his claim more fully or pressed it more vigorously, but his failure to do so does not relieve the trial court of its obligation under *Holloway*. This record amply shows that the trial court knew or should have known that a potential conflict of interest existed for the attorney representing these two defendants. At that point the court had an affirmative duty to hold a hearing

**1.** Indeed, at trial Guadalupe testified that he was the driver of the van and that his brother was the person in the back of the van. He also testified that his brother had shot twice out the side door of the van. Although this was consistent with Salustrio's trial testimony, at the time of their arrest Guadalupe had said that he, not Salustrio, was the trigger man. Obviously, separate counsel would have vigorously attacked this inconsistency.

**2.** The record contains no transcription of what took place at that time. However, even if such a transcription showed that the trial court extensively questioned these appellants about the possible conflict of interest present in the case, and even if both appellants indicated that no such conflict existed at that time, our view of the case would not change. Conflicts of interest can arise at any time. The question we must decide is whether the trial court was aware that a potential conflict existed at the time the motion was filed, not whether such a potential conflict existed six weeks before.

and determine whether the risks inherent in corepresentation in this case were too remote to warrant separate counsel or to see that the appellants were represented by separate counsel. Since the trial court failed to do either, under *Holloway* we must presume that the alleged conflict of interest existed and that the appellant, Guadalupe Lerma, was harmed. The judgment of conviction is reversed as to the appellant Guadalupe Lerma. In light of this disposition, we need not consider the remaining grounds of error that Guadalupe Lerma has raised.

Salustrio Lerma has raised a single ground of error which contends that the court's charge to the jury improperly failed to include a charge on the offense of aggravated assault. This ground has no merit. This court has repeatedly held that when death has resulted, a defendant is entitled to a charge on aggravated assault only when there is evidence of a lack of intent to kill *and* the weapon used was not deadly per se or deadly in the manner of its use. See *Simpkins v. State*, 590 S.W.2d 129 (Tex.Cr.App.1979); *Ruiz v. State*, 523 S.W.2d 691 (Tex.Cr.App.1975); *Matheson v. State*, 508 S.W.2d 77 (Tex.Cr.App.1974). Since a shotgun is a deadly weapon per se, *Stewart v. State*, 532 S.W.2d 349 (Tex.Cr. App.1976), Salustrio Lerma was not entitled to an instruction on the lesser offense of aggravated assault.

Salustrio Lerma has not raised the conflict of interest issue raised in his brother's appeal. However, this issue could be raised for the first time in a post-conviction collateral attack. See *Ex parte Parham*, 611 S.W.2d 103 (Tex.Cr.App.1981); *Ex parte Alaniz*, 583 S.W.2d 380 (Tex.Cr.App. 1979). If we now ignore this issue, such a post-conviction proceeding would result in the further expenditure of the judicial resources of both the convicting court and this court. Furthermore, the record upon which such a claim must turn is now before us, and the potential conflict of interest in this case was, if anything, more damaging to Salustrio than to Guadalupe.[3] As V.A.C.

C.P., Article 40.09(13) recognizes, we may review error "in the interest of justice." It is "in the interest of the system of justice" to review this issue now, rather than invite further, inevitable litigation. *Adams v. State*, 610 S.W.2d 780, 781 (Tex.Cr.App. 1981).

The initial question which we must decide is whether Salustrio Lerma is entitled to the same presumption of harm as is Guadalupe Lerma. Although the "objection" at the pre-trial hearing was made on behalf of Guadalupe Lerma, and the trial judge's questioning was directed entirely to Guadalupe, we do not read *Holloway v. Arkansas*, supra, as requiring a formal objection or motion to trigger the application of the presumption. Rather, we read *Holloway* as requiring only that the trial court's attention be directed to the possibility that a conflict of interest exists. Once that has been done, the trial court's affirmative duty to inquire into the existence of such a conflict arises.

Nothing in *Cuyler v. Sullivan*, supra, persuades us that a formal objection on behalf of each defendant is necessary. Indeed, the Court's discussion indicates that the affirmative duty to inquire could be triggered by something other than a formal objection:

> "*Holloway* requires state trial courts to investigate timely objections to multiple representation. But nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case. [footnote omitted] Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of the trial. [footnote omitted] *Absent special circumstances*, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist ...."

3. See note 2, above.

*Unless the trial court knows or reasonably should know* that a particular conflict exists, the court need not initiate an inquiry.[13]

[13] Cf. *United States v. Medel,* 592 F.2d 1305, 1312–1313 (CA5 1979); *Foxworth v. Wainwright,* 516 F.2d 1072, 1076–1077 (CA5 1975)."

446 U.S. at 346–347, 100 S.Ct. at 1717. (emphasis added).

That portion of *Medel* cited by the Court states, "Defense counsel ... never indicated to the trial court that a conflict might exist. Nor do we find anything in the record that should have alerted the Court to such a possibility." The *Foxworth* citation contains the following: "The trial judge has an obligation, however, to anticipate conflicts reasonably foreseeable at the outset of the case, when counsel is appointed."

Thus, *Cuyler* itself, and the cases cited in note 13, recognize that the trial court's affirmative duty to inquire into a potential conflict can arise even in the absence of a formal objection.

We hold that the trial court was made sufficiently aware of the potential conflict of interest with respect to both defendants in this case. Therefore, the appellant Salustrio Lerma is entitled to the same presumption that an actual conflict of interest existed and that he was harmed thereby.

The judgments of conviction of both appellants are reversed and the causes are remanded for new trials.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

McCORMICK, Judge.

We granted the State's motions for leave to file motions for rehearing in both of these cases to examine the panel's holding as to the trial court's failure to appoint separate counsel for each defendant. The panel opinion correctly set out the law applicable to these cases:

"In *Holloway v. Arkansas,* 435 U.S. 475 [98 S.Ct. 1173, 55 L.Ed.2d 426] (1978), the United States Supreme Court explored the risks inherent in the representation of co-defendants and set forth standards for review when those risks were made known to the trial court. The Court held that when the possibility of inconsistent interests between co-defendants is brought home to the trial court, the court has an affirmative duty to assure that the co-defendants are not deprived of their right to the effective assistance of counsel. Once this duty arises, the trial court has an obligation either to see that the co-defendants are represented by separate counsel or to 'take adequate steps to ascertain whether the risk was too remote to warrant separate counsel.' *Id.* at 484 [98 S.Ct. at 1178]. Furthermore, the Court held that a defendant who has made an objection to joint representation need not show specific harm and prejudice. Reversal is automatic whenever a trial court improperly requires joint representation over timely objection.

"Two years later the United States Supreme Court again took up the problem of conflict of interest. In *Cuyler v. Sullivan,* 446 U.S. 335 [100 S.Ct. 1708, 64 L.Ed.2d 333] (1980), the Court resolved two issues specifically reserved in *Holloway.* First, the Court held that without a timely objection to joint representation, trial courts have no affirmative duty to inquire whether a conflict of interest exists. As the Court put it, 'Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.' *Id.* at 347 [100 S.Ct. at 1717]. Second, the Court held that without a trial objection, *Holloway's* presumption of harm will not be applied. 'In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.' *Id.* at 348 [100 S.Ct. at 1718]." Pp. 490–491

*Guadalupe Lerma—Cause No. 62,537*

The docket sheet shows that on June 20, 1978, after arraigning both appellants, the

trial court inquired of appellants and their counsel as to a possible conflict of interest. The docket sheet reflects that the trial court was informed there would be no problem in that area. On July 31, 1978, the day trial was to begin, defense counsel filed a motion for continuance at 10:30 a.m. which contained the following language:

"That Defendant, LUPE LERMA, does not wish to be represented by the attorney of record, ROBERT NINO, and the fact that Defendant, LUPE LERMA does not wish to be represented by ROBERT NINO, will jeopardize the trial of this cause in that the Defendant, LUPE LERMA, might testify against Defendant, SAL LERMA, JR."

At 11:55 a.m., before the jury was selected and impaneled, the trial court held a hearing on the above motion. The pertinent portion of that hearing is transcribed below:

"THE COURT: ... Now then, the Court specifically finds that on June 20th, 1978, the Defendants appeared, as stated on the docket sheet, with their lawyer, Luis DeLeon, who is an employee of the law offices of Robert Nino and the Defendants were duly arraigned and their bond set. Now then, at that time, the Court made inquiry as to whether or not there was any conflict of interest and there was none expressed at that time and one lawyer was to represent both Defendants.

"The Court further finds that on June 8th, 1978 the Defendants appeared without their lawyers and were given a notice of a trial setting and to make it abundantly clear to the Defendants that the case was set for trial, the Court not only checked the appropriate part of the notice of setting, but circled it and the Defendants' lawyer was again informed of the notice of trial setting on June 20th, 1978 when they appeared in court with their lawyer to be arraigned.

"Therefore, at this time the Court will overrule the Motion for Continuance as submitted.

"MR. NINO: Note our exception to that ruling, please.

. . . . .

"MR. NINO: As far as Defendant Guadalupe Lerma, who does not wish my representation, he does not want me to represent him and in that regard, I don't want to be responsible for whatever Mr. Lerma might decide to do later on, being that he is forced to go forward with the case despite my objections and we object as to the Defendant, Guadalupe Lerma.

"THE COURT: Well, you heard what I dictated into the record about what all happened since you have been indicted, haven't you, which is Guadalupe Lerma; you heard that, didn't you?

"GUADALUPE LERMA: Yes, sir.

"THE COURT: That is all true, isn't it?

"GUADALUPE LERMA: Yes, sir.

"THE COURT: Sir?

"MR. NINO: Do you want him to explain to you?

"GUADALUPE LERMA: Well, I would like for him to explain.

"THE COURT: Well, you remember when you came up here on June 9th— you came up here June 8th, didn't you?

"GUADALUPE LERMA: Yes, sir.

"THE COURT: And I gave you a piece of paper here on the settings and told you—and I told you that the case was set for trial on July 31st, didn't I?

"GUADALUPE LERMA: Yes, sir.

"THE COURT: And you told me that Mr. Nino and his offices were representing you?

"GUADALUPE LERMA: But I changed my mind, I don't want him to.

"THE COURT: I asked you if there was any conflict of interest and you said 'No' and I told you it was set for trial on July 31st and you signed this piece of paper. All that is true, isn't it?

"GUADALUPE LERMA: Yes, sir.

"THE COURT: And you come up here the day of trial saying you don't want this lawyer and you have paid him money, haven't you?

"GUADALUPE LERMA: Yes, sir.

"THE COURT: Well, the Court has overruled your Motion for Continuance and the Court advises you to cooperate with your lawyer totally. Court is adjourned until 1:30."

The panel found that the judge was properly put on notice that the appellant was in some form or fashion arguing a conflict of interest. The State argues that because there is nothing specific in the motion concerning a conflict of interest the trial judge did not err in conducting an inquiry into the conflict. We disagree with the State and find that the panel was correct in holding that the trial court was put on notice of a potential conflict of interest. As the panel noted, the trial judge recognized this when he reminded the defense that he had inquired into a possible conflict of interest several weeks earlier.

The question which remains is whether appellant's objection was timely in that it was voiced on the day of trial. As the State correctly noted in its brief on rehearing, the Supreme Court has noted that untimely motions made for dilatory purposes only should not be tolerated by the trial courts. *Holloway v. Arkansas*, 435 U.S. at 486, 98 S.Ct. at 1180. However, there has been no guidance from the Supreme Court as to what constitutes an untimely motion.

In *United States ex rel. Ballard v. Bengston*, 702 F.2d 656 (7th Cir.1983), Ballard filed an application for writ of habeas corpus arguing that his Sixth Amendment right to effective assistance of counsel had been violated. The record showed that one week before trial Ballard's defense attorney filed a motion to withdraw as attorney of record for Ballard because of a conflict of interest. This was some four months after he had been retained by the codefendants and the trial date had been set and rescheduled several times. The motion to withdraw was heard on the first day of trial and the judge denied it. When defense counsel reurged the motion to withdraw during the trial, the trial judge, noting that he thought it was made for dilatory purposes, again denied the motion. The Circuit Court of Appeals determined that the federal district court had relied entirely upon the trial judge's evaluation of the motion and reversed and remanded the case for an evidentiary hearing. In discussing the timeliness of Ballard's motion, they wrote:

"We decline to view this motion as untimely. Although defense counsel has the ethical obligation to raise objections to joint representation as early as possible before the commencement of trial, it is entirely conceivable that the conflict may not become apparent until shortly before trial is scheduled to begin. To hold that counsel must file such motion a set number of weeks before trial is to undermine not only the sixth amendment's guarantee, but also counsel's ethical obligation to disclose a conflict immediately upon its discovery.

"Because a trial judge's failure to inquire into the circumstances of an alleged conflict upon timely objection is justified only when the prospect of dilatory practices is present, *Holloway v. Arkansas*, 435 U.S. at 487, 98 S.Ct. at 1180, a finding of such practices must be scrutinized carefully. In the present case, the trial judge's basis for his conclusion that the pretrial motion was filed for dilatory purposes is unknown. Although the trial date had been reset several times, the reasons for these delays were not articulated by the trial judge at the hearing on the motion to withdraw. It is unknown whether petitioners had requested continuances, and if so, for what reasons." (footnote omitted) 702 F.2d at 663.

Dicta in the case of *Smith v. Anderson*, 689 F.2d 59 (6th Cir.1982), seems to indicate that a "timely motion" is any motion that is raised before the trial is concluded.

"At least two other practical policies support the distinction drawn in *Cuyler v. Sullivan*. The imposition upon the state, which is not heavy when timely objection may be judicially remedied by appointment of separate counsel before trial, increases dramatically once the trial has occurred and appellate or post con-

viction remedial vehicles are the forum for conflict claims. See generally, *United States v. Mari*, 526 F.2d 117, 120–21 (2d Cir.1975) (Oakes, J., concurring), cert. denied, 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976). Furthermore, the focus of the criminal trial as the single most important stage in the criminal process is also retained by relying upon counsel's *pretrial* representations but imposing a more searching examination once the trial has concluded without the conflict having been raised." (footnote omitted) 689 F.2d at 65.

See also *United States v. Ramsey*, 661 F.2d 1013 (4th Cir.1981), in which it was held that since the defendants had not raised an objection to the multiple representation arrangement *either before or during trial,* it was their burden on appeal to show the existence of an actual conflict of interest.

■ We are hesitant in this jurisdiction to adopt a black and white rule which applies in every situation. However, we do find that in some instances, where the conflict does not arise until the trial is in progress, a motion alleging such a conflict may be timely even though made after trial begins. We do find that any motion made *after* the trial has ended is untimely. Undoubtedly, there will sometimes be motions alleging a conflict of interest filed at various times in the trial process which are filed solely for the purposes of delay. Likewise, it is conceivable that a conflict of interest might not arise until the closing moments of a trial and a motion alleging that conflict filed at that time will be sufficient to put the trial judge on notice so that he or she may conduct the appropriate inquiry. Each case will be adjudged on an individual basis.

■ We find that in the instant case appellant's motion was timely. The record before us does not indicate in any fashion that the motion was made for the purpose of delay. Because there is no showing that the motion was merely dilatory, we find that the trial court erred in not conducting an inquiry into the potential conflict of interest. *Holloway v. Arkansas,* supra.

The State's motion for rehearing in Cause No. 62,537 is overruled.

*Salustrio Lerma—Cause No. 62,981*

■ The panel opinion correctly pointed out that Salustrio only raised one ground of error on appeal and this ground of error dealt with the jury charge. Salustrio did not raise the conflict of interest issue either on appeal or in the trial court. Yet the panel found that such issue had to be discussed "in the interest of justice" because there was a possibility that it might be brought up in an application for writ of habeas corpus at a later date. The panel then applied the *Holloway* standard and found that Salustrio was entitled to a presumption that an actual conflict of interest existed and that he was harmed thereby. Consequently, the conviction was reversed.

The analysis of the panel opinion seems to directly contradict the law upon which it relied. The panel found that although Salustrio did not object, Guadalupe's "objection" should have put the trial judge on notice that a possibility of a conflict of interest existed. Thus Salustrio was entitled to the same presumption as one who had voiced a proper objection. But *Holloway v. Arkansas,* supra, and *Cuyler v. Sullivan,* supra, stand for the proposition that no presumption exists unless the individual defendant voices his own personal objection. This is clearly pointed out in the language of *Holloway v. Arkansas,* supra:

"The Court's refusal to reverse Kretske's conviction is not contrary to this interpretation of *Glasser.* Kretske did *not* raise his own Sixth Amendment challenge to the joint representation. 315 U.S., at 77, 62 S.Ct., at 468; see Brief for Petitioner Kretske in *Glasser v. United States,* O.T. 1941, No. 31 [315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680]. As the Court's opinion indicates, some of the codefendants argued that the denial of Glasser's right to the effective assistance of counsel prejudiced them as alleged co-conspirators. 315 U.S., at 76–77, 62 S.Ct., at

467. In that context, the Court required a showing of prejudice; finding none, it affirmed the convictions of the codefendants including Kretske." *Holloway v. Arkansas,* 435 U.S. at 489, 98 at 1181.

Thus the rule is that if a codefendant has not voiced his own personal objection to the multiple representation arrangement, he is foreclosed from relying on the objection of his codefendant to preserve error. See also *United States ex rel. Ballard v. Bengston,* 702 F.2d 656, 661, n. 3 (7th Cir.1983); *Scott v. United States,* 598 F.2d 392 (5th Cir.1979).

We now hold that because Salustrio did not voice an objection as to the potential conflict of interest, he is not entitled to rely upon his co-defendant's objection. Thus he is not entitled to the presumption of conflict under *Holloway v. Arkansas,* supra, but he must show some actual conflict pursuant to *Cuyler v. Sullivan,* supra, before he is entitled to reversal of his conviction. *Pollan v. State,* 612 S.W.2d 594, 596 (Tex.Cr.App.1981); *Ex parte Parham,* 611 S.W.2d 103 (Tex.Cr.App.1981); *Hurley v. State,* 606 S.W.2d 887 (Tex.Cr.App.1980). As noted above, Salustrio did not even argue this issue on appeal so he has made no attempt to show any actual conflict. The Supreme Court made it very clear in *Cuyler v. Sullivan,* supra, that the burden of showing this conflict is upon the defendant. We will not go on a fishing expedition because the defendant has not even attempted to carry that burden. Should Salustrio feel at a later date that he may be able to successfully shoulder that burden, he may certainly bring the issue up in an application for writ of habeas corpus. Until then we must grant the State's motion for rehearing and affirm Salustrio's conviction in Cause No. 62,981.[1]

CLINTON, J., concurs in the result in Cause No. 62,981.

1. On appeal Salustrio raised a single ground of error relating to the court's charge. Before looking at the conflict of interest issue, the pan- el reviewed the ground of error and found no error. We agree with this holding.