**Anthony BERCHENY, Petitioner,**

v.

**Perry JOHNSON, Director, Michigan State Corrections Commission, Respondent.**

**No. 78–71471.**

United States District Court, E. D. Michigan, S. D.

Dec. 17, 1979.

As Corrected Jan. 21, 1980.

**1166**

Carl Ziemba, Detroit, Mich., for plaintiff.

William E. Molner, Asst. Atty. Gen., State of Mich., Lansing, Mich., for defendant.

COHN, District Judge.

Before the Court is a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner claims a deprivation of his 14th Amendment rights because of a breach of a plea agreement which he entered into with the Prosecuting Attorney of Oakland County, Michigan as an inducement to enter a guilty plea. Respondent has moved to dismiss (Fed.R.Civ.P. 12(b)(6)) or, in the alternative, for summary judgment (Fed.R. Civ.P. 56(b)).

Petitioner is currently serving a term of 18 to 40 years on his plea of guilty to a charge of assault with intent to commit murder with a weapon M.C.L.A. § 750.83. Petitioner acknowledged taking his wife to a farm field and shooting her five times. He told the Court at sentencing that he was driven to the crime by his inability to cope with his wife's heroin habit. The State asserted, and the sentencing judge took the position, that petitioner's crime was motivated by greed; he was attempting to cash in on a life insurance policy he had recently purchased on his wife's life.[1]

1. While not determinative, petitioner and his wife had apparently reconciled:

"MR. HARDIG: . . . Judge, if you look on page 2 of the Pre-Sentence Investigation Report, Mrs. Bercheny lived with him. She walked out of this court with him, arm in arm. They kissed as they walked out of this court. She told me she didn't want him to go to jail. She did not talk to the Probation Department, for what reason I don't know.

Petitioner's constitutional claim has merit. Unless the State vacates petitioner's sentence on its own motion and resentences him after a psychiatric evaluation (the lack of which before sentencing was the cause of the breach of the plea agreement) the writ will be granted.

Petitioner was sentenced in early 1976 following a change of a not guilty plea. He first appeared before the Oakland County Circuit Court on January 9, 1976. At that time a written agreement was filed with the court which stated that the People had no objection to the court appointing a psychiatrist to evaluate petitioner.

Paragraphs 10 and 15 of the written plea agreement read:

"10. Are you stating that you, your lawyer and the prosecutor have entered into an agreement that the People have no objection to if:

1. The court appoints a psychiatrist to evaluate me.

2. Bond be continued.

3. I can live with my wife.

4. Sentencing be February 26, 1976."

. . . . .

She thinks he ought to get a light sentence. Others, as set forth in the probation report, think he ought to get a heavy sentence." (Transcript of February 26, 1976 hearing, p. 3.)

2. Excerpts from the transcript of the January 9, 1976 hearing read:

"MR. SEYMOUR: . . . The People are ready. As the Court is very well aware, Counsel for the defendant Mr. Bercheny, Mr. Hardig, the Court and myself had conversations regarding this case. I believe an agreement has been entered into now between Mr. Hardig and myself, to the effect that the defendant, I believe, is prepared at this time to change his plea to Assault with Intent to Commit Murder." (p. 2.)

. . . . .

"Q. (by the Court): Are you stating that you, your lawyer and the Prosecutor have entered into an agreement that the People have no objection if the Court appoints a psychiatrist to evaluate you; that your bond is continued and that you can live with your wife and that sentencing will be on February 26, 1976?

A. (by the defendant): Yes, Your Honor." (p. 4.)

. . . . .

"15. Tell us in your own words what you did:

My wife's heroin addiction caused me so much mental turmoil, that in my confused state of mind, I shot her, five times, intending to kill her."

At the January 9th hearing the prosecuting attorney advised the court that a plea agreement had been entered into; the court, in addressing petitioner, paraphrased the agreement; the court accepted the plea and referred the matter to the probation department; and lastly the court directed that a psychiatrist be appointed to evaluate petitioner for the purpose of assisting in the pre-sentence report.[2]

It is obvious from the record that the purpose of the psychiatric examination was to provide support for a light sentence. Petitioner, in effect, claimed the attempt on his wife's life was a transient situational disturbance unlikely to occur again. The examination hopefully would have provided data to buttress a claim of temporary mental impairment.

Petitioner was sentenced on February 26th. No mention was made of any psychi-

"THE COURT: Other than those agreements which the Respondent has testified to, are there any other agreements that Counsel have made?

MR. HARDIG: I have not made none, Your Honor.

MR. SEYMOUR: I have made none, Your Honor." (p. 7.)

. . . . .

"THE COURT: The plea is accepted. This matter is referred to the Oakland County Probation Department for investigation and report back to the Court.

Mr. Hardig, you and the People indicate they have no objection to the sentencing date of February 26, 1976. Ordinarily we would sentence on February 6 or February 5, 1976, at 8:30. But, it is my understanding you do not want that time?

MR. HARDIG: I would like to make two motions, Judge. I respectfully request the Court appointed psychiatrist to evaluate Mr. Bercheny for the purpose of assisting the Probation Department in making its pre-sentence report.

THE COURT: Any objection?

MR. SEYMOUR: No.

THE COURT: So Ordered." (p. 8.)

atric evaluation. He returned to court the following day to be advised of his right to appeal. At that time his attorney was appointed to represent him should he elect to appeal.

Some months later (the record does not say when) petitioner took a delayed appeal to the Michigan Court of Appeals, and thereafter leave to appeal was denied by the Michigan Supreme Court.

The Court of Appeals entered a pro forma denial finding no merit in the appeal. The Supreme Court denied leave to appeal with one justice dissenting who would have ordered an evidentiary hearing to determine whether the plea agreement was observed or waived and, if not waived, the cause remanded for resentencing. *People v. Bercheny*, 402 Mich. 950s (1978).

Petitioner filed for a writ of habeas corpus in this Court on June 13, 1978, claiming that a plea of guilty motivated by an unfulfilled promise is involuntary. Petitioner asks that the guilty plea be set aside or, in the alternative, that the plea be vacated for resentencing by a different judge after a psychiatric evaluation. The Attorney General, in opposition, argues that the plea agreement was fulfilled since the prosecutor's agreement was "not to object" and since the prosecutor did not, in fact, object the bargain was fulfilled. Alternatively, the Attorney General argues waiver.[3] Lastly, the Attorney General says that relief, if any, should be limited to resentencing after a psychiatric examination, thereby fulfilling the terms of the plea agreement.

■ The legal principles applicable are clear. Even though there is no constitutional right to plea bargain, *Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 51

L.Ed.2d 30 (1977), the process is a significant one.

In *Blackledge v. Allison*, 431 U.S. 63, 71, 97 S.Ct. 1621, 1627–1628, 52 L.Ed.2d 736 (1977), the Supreme Court of the United States said:

"Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned. The defendant avoids extended pretrial incarceration and the anxieties and uncertainties of a trial; he gains a speedy disposition of his case, the chance to acknowledge his guilt, and a prompt start in realizing whatever potential there may be for rehabilitation. Judges and prosecutors conserve vital and scarce resources. The public is protected from the risks posed by those charged with criminal offenses who are at large on bail while awaiting completion of criminal proceedings."

■ Most importantly, however, is the principle that if a plea bargain is made a defendant has the right to expect that it will be fulfilled. This principle was firmly established in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).[4]

In *Santobello* the United States Supreme Court said:

". . . all of these considerations presuppose fairness in securing agreement between an accused and a prosecutor. It is now clear, for example, that the accused pleading guilty must be counseled, absent a waiver. *Moore v. Michigan*, 355 U.S. 155 [78 S.Ct. 191, 2 L.Ed.2d 167] (1957). Fed.Rule Crim.Proc. 11, gov-

---

**3.** In support of the waiver claim the Attorney General cites portions of the transcript of the February 26th hearing:

"THE COURT: Mr. Hardig, have you had an opportunity to read the Pre-Sentence Investigation Report and are the facts therein accurate?
JOSEPH L. HARDIG, JR.: Yes, Judge I have had a chance to read it. To the best of my knowledge the facts therein are true. I

would like to address the Court at this time if I may." (p. 2.)

"THE COURT: Mr. Bercheny, do you have anything to say in your own behalf before the Court imposes sentence?
MR. BERCHENY: No, your Honor." (p. 5.)

**4.** The Michigan Supreme Court had recognized the principle some ten years earlier in *In re Valle*, 364 Mich. 471, 110 N.W.2d 673 (1961).

erning pleas in federal courts, now makes clear that the sentencing judge must develop, *on the record*, the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge. The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known. There is, of course, no absolute right to have a guilty plea accepted. *Lynch v. Overholser*, 369 U.S. 705, 719 [82 S.Ct. 1063, 1072, 8 L.Ed.2d 211] (1962); Fed.Rule Crim.Proc. 11. A court may reject a plea in exercise of sound judicial discretion. (emphasis in original)

This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

. . . . .

. . . we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration."

404 U.S. 257, 261–263, 92 S.Ct. 495, 498–499, 30 L.Ed.2d 427 (footnote omitted).

*See also*: Westin and Westin, *Constitutional Law of Remedies for Broken Plea Bargains*, 66 Calif.L.R. 471.

■ In light of these authorities, the position taken by the Attorney General, i. e., that either the terms of the agreement were fulfilled by the prosecuting attorney when he did not object to the appointment of a psychiatrist or that petitioner waived his right to object when he allowed himself to be sentenced without having been examined, is without merit. A psychiatric examination was the essence of the agreement. The agreement was in writing. The trial judge inquired not only into the fact it existed, but what it provided; *see*, Mich. G.C.R.1963, 785.7; *Guilty Plea Cases*, 395 Mich. 96, 235 N.W.2d 132 (1975). The petitioner accepted the court's description of the plea agreement. Sentencing was delayed to allow time to obtain the psychiatric evaluation. Most importantly, the trial judge ordered it.

■ A plea agreement is not an appropriate context for the State to resort to a "rigidly literal approach in the construction of language", *U. S. v. Bowler*, 585 F.2d 851, 854 (7th Cir. 1978) and "[p]resuming waiver from a silent record is impermissible." *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962). If the trial judge was unhappy with the plea agreement he should have said something. *United States ex rel. Culbreath v. Rundle*, 466 F.2d 730 (3rd Cir. 1972).

While it might be argued (which the Attorney General does not) that no written order was ever entered,[5] the trial judge's words, "so ordered" were at least a judicial instruction, *In re LaMarre*, 494 F.2d 753 (6th Cir. 1974), and were in confirmation of the plea agreement.

Nothing could be clearer on the record of this case but that as of January 9, 1976 petitioner was entitled to have a psychiatric evaluation before he was sentenced.

The Attorney General calls the Court's attention to *Lambur v. Slayton*, 356 F.Supp. 747 (E.D.Va.1973) as authority for the proposition that where a defendant becomes aware of the breach of a plea agreement prior to sentence and is in a position to withdraw his plea he cannot be heard to complain. In *Lambur* two different judges

---

**5.** The Michigan cases are somewhat confusing as to the need for a written order. *See Lewis v. Wayne County Sheriff*, 335 Mich. 640, 56 N.W.2d 211 (1953); *People v. Norman*, 9 Mich. App. 647, 158 N.W.2d 38 (1968); *Hosner v. Brown*, 40 Mich.App. 515, 199 N.W.2d 295 (1972); G.C.R.1963, 522.

were involved, (i. e., before whom the promises were made), and the District Judge found that the defendant knew that the bargaining process had broken down and knew that he had an opportunity to correct the error. It was years later that the broken promise was asserted. Here the situation is substantially different. The same prosecutor and the same sentencing judge are involved. No substantial time elapsed between the time the petitioner was sentenced and the time he complained of the broken promise. The State does not claim prejudice by the delay. There is simply no basis for claiming petitioner was conscious of the fact that the promise had been broken. *See Culbreath, supra.*

█ The Court accepts the principle that a federal judge should review with care a state court conviction and that it is a duty not free from controversy.[6] However, the U.S. Supreme Court has said that under 28 U.S.C. § 2254 the claims of petitioner must be entertained. *Jackson v. Virginia,* —— U.S. ——, p. ——, 99 S.Ct. 2781, p. 2790, 61 L.Ed.2d 560 (1979). The concerns expressed by Justice Stevens in his concurring opinion (undermining morale of state courts) in *Jackson,* (Id. at ——, 99 S.Ct. at 2790) under the circumstances here should not cause any concern.

█ While petitioner's claim has been reviewed in theory by two state appellate courts they failed to follow their own case law in determining his claim was without merit. *People v. Brooks,* 396 Mich. 118, 240 N.W.2d 1 (1976). *See also* George, *Michigan Criminal Procedures* (Ann Arbor: ICLE) § 900(E). The conclusion is inescapable that petitioner was assured that he would be evaluated by a psychiatrist who would report his findings to the judge before being sentenced. This did not happen. Petitioner did not get the benefit of the bargain he made. Under the circumstances his sentence must be vacated, and unless resentenced after a psychiatric evaluation, the writ granted.

The ends of justice will best be served if resentencing be done by a judge from a different circuit to assure a disposition giving due consideration to his guilty plea, the factors generally to be considered when imposing a sentence, and the psychiatric evaluation. *U. S. v. Ewing,* 480 F.2d 1141 (5th Cir. 1973).

Therefore, this Court will direct that a writ of habeas corpus be granted unless 20 days from the date hereof the State, on its own motion, vacates the sentence, and within 60 days thereafter petitioner is resentenced after a psychiatric evaluation is obtained as required by the plea agreement. Resentencing shall be by a judge from outside of Michigan's Sixth Judicial Circuit designated under state practice in such circumstances. *See People v. Eck,* 39 Mich. App. 176, 197 N.W.2d 289 (1972); *People v. Hildabridle,* 45 Mich.App. 93, 206 N.W.2d 216 (1973).

The motion for dismissal or, in the alternative, for summary judgment, will be denied.

IT IS SO ORDERED.

---

6. *See* discussion in Wright, *Federal Courts,* § 53 (3d ed. 1976).