Donald SMITH, Plaintiff,

v.

Charles ANDERSON, Defendant.

Civ. No. 79–70778.

United States District Court, E. D. Michigan, S. D.

Nov. 10, 1980.

David M. Lawson, Southfield, Mich., for plaintiff.

Sherwin Vine, Asst. State's Atty. Gen., Detroit, Mich., for defendant.

## OPINION AND ORDER GRANTING WRIT OF HABEAS CORPUS

COHN, District Judge.

### I.

#### A.

Before the Court is a petition for a writ of habeas corpus under 28 U.S.C. § 2254 claiming a deprivation of a Sixth Amendment right to counsel because of the forced joint representation of petitioner and a co-defendant by the same lawyer in a June, 1971 jury trial in the Recorder's Court of the City of Detroit. Petitioner also claims a Sixth and Fourteenth Amendment violation in the way the jury was instructed. Respondent has moved to dismiss, Fed.R.Civ.P.

12(b)(6), or, in the alternative, for summary judgment, Fed.R.Civ.P. 54. Petitioner has also moved for summary judgment.

For the reasons stated below the petition will be granted unless the State of Michigan on its own motion moves to set aside petitioner's conviction and grant a new trial within sixty days.

## B.

Petitioner, together with Abraham Allen (Allen), was found guilty on June 22, 1971 of armed robbery (M.C.L.A. § 750.529) in the Recorder's Court after a four-day jury trial. He was sentenced to a term of 8 to 40 years and is currently confined to the State Prison of Southern Michigan at Jackson. His conviction was affirmed by the Michigan Court of Appeals. *People v. Allen*, 42 Mich.App. 195, 201 N.W.2d 353 (1972). The Michigan Supreme Court denied leave to appeal, 389 Mich. 769 (1973).

Petitioner filed a *pro se* petition in this court on March 21, 1979. Counsel was appointed for petitioner in August, 1979 and thereafter the motions briefed and argued.

At the initial oral argument on March 3, 1980 it appeared that petitioner and Abraham Allen were charged in the Recorder's Court at separate times under separate case numbers with the same lawyer appointed for each of them, and that the joint representation came about because their cases were consolidated for trial on the same day. It was not clear from the record how or why the same lawyer was appointed to represent both of them or how under procedures in the Recorder's Court in 1971 the two cases were assigned for trial on the same day before the same judge. The Court therefore directed that an evidentiary hearing be held to explain the apparent coincidence and invited the Prosecuting Attorney for the County of Wayne to participate. An evidentiary hearing was held on July 16, 1980, at which time the Court heard additional argument and directed supplemental briefs.

## C.

The petition initially contained four claims for relief; however only three issues, i. e., two jury instructions and the lack of effective counsel were properly preserved for review in habeas corpus. While the jury instruction issues were not considered by the Michigan Court of Appeals in constitutional terms, the issues were raised in petitioner's brief to that court, 28 U.S.C. § 2254(a) and (b); the effective counsel question was discussed and rejected by the Court of Appeals. 42 Mich.App. at 198, 201 N.W.2d 353.

## II.

With regard to the jury instructions, petitioner claims that the trial court's instructing the jury that an armed robbery took place denied him a right to trial by jury and the instruction on alibi improperly shifted the burden of proof to him in violation of his due process rights under the Fourteenth Amendment.

▮ Neither claim is well taken. A Federal Court in a habeas corpus proceeding must do more than find a jury instruction erroneous to grant relief. The instructions must have so infected the entire trial that the resulting conviction violates due process; and generally there must be an objection at trial. *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). Likewise it must be viewed in the "context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

## A.

▮ The difficulty with petitioner's position is that no one at trial controverted the fact that an armed robbery occurred. Petitioner's sole defense was that he did not participate. The lawyer did not object but rather acknowledged the fact that a robbery had occurred. Viewed in the context of the proofs at trial the instruction offers no basis for habeas corpus relief.

## B.

The instruction on alibi to which objection is made reads:

"In considering this defense of Alibi, you may consider the fact that the defendant, Donald Smith, failed to call as a witness any person whom he said was at the apartment with him at the time of the armed robbery here charged. You may properly consider in your deliberations the reason or reasons as to why the defendant failed to produce testimony, which is within his power to produce, to corroborate his defense of Alibi."

The trial court went on to specifically instruct the jury that the prosecution had the burden of proof in establishing petitioner's presence at the time and place of the offense and if it had a reasonable doubt as to whether petitioner was present it would be its duty to acquit. The instruction taken as a whole did not impermissibly shift the burden of proof. *Whalen v. Johnson*, 438 F.Supp. 1198, 1204 (E.D.Mich.1977).

## III.

Petitioner's claim that his Sixth Amendment right to effective counsel was violated by the trial court's insistence that he and his co-defendant proceed to trial with the same lawyer has considerably more merit.

## A.

As mentioned above the record filed with the Court did not explain why petitioner and Allen had the same lawyer at trial or why having been separately informed against they appeared in the same courtroom before the same judge on the same day for trial. All the record showed initially was that at the commencement of trial the prosecutor moved for consolidation of the two cases. At the evidentiary hearing the Court learned the circumstances of the appointment of the same lawyer and the way the single trial came about.

## B.

Petitioner and Allen were arrested at different times and therefore different files were created for them in the Recorder's Court. The lawyer was appointed for petitioner by a Recorder's Court judge in January 1971. He was appointed by a different judge in April 1971 for Allen when Allen was arraigned. There was no reason for the second judge to know from the file before him that Allen was charged with the same crime as petitioner and therefore no reason for the judge to know the lawyer he appointed already represented another defendant charged with the same crime. The lawyer was not present at the time of the appointment.

The lawyer testified at the evidentiary hearing he saw no conflict when he received the second appointment since he had no reason to believe at that time the two cases would be consolidated. The Wayne County Prosecuting Attorney, as a practical matter, had no reason to know of the dual appointment at the time it was made. Sometime in May 1971 at a pre-trial conference the lawyer was advised by an assistant prosecuting attorney he intended to move for consolidation. The lawyer testified he told the assistant prosecutor he would be forced to object. There was no further mention of consolidation or move by the assistant prosecutor until the day of trial. In some manner the two cases were assigned for trial the same day, presumably at the direction of the assistant prosecutor. When the lawyer received notice of trial in both cases for the same day he testified he saw no problem because he assumed they would be tried back-to-back, a practice he said was common at that time in Recorder's Court.

The lawyer further testified that he told petitioner about his joint representation but does not recall saying anything about consolidation. He also testified that in talking to the two defendants he learned of their inconsistent positions. The basis for their defenses being inconsistent he said was the fact that petitioner said he was not present at the scene of the crime while Allen said he was a bystander. The lawyer further testified he vaguely recalled Allen telling him he saw petitioner at the scene. The lawyer's explanation is less than satisfactory but offers no excuse for what followed.

### C.

When petitioner and Allen appeared in the same courtroom on the same day before the same judge with the same lawyer the transcript shows that the following interplay took place:

"THE COURT: Mr. Sherman and Mr. Glicksman, are there any matters to be discussed prior to calling the jury?

MR. GLICKSMAN: Yes, Your Honor. There is a matter to be discussed; and that is there are two files in this matter. One is entitled Abraham Allen, the number being 70–3378, as well as Donald Smith, the file number being 71–00868. And, Your Honor, these two files both stem from the same facts; that is, the People contend that the facts arise out of the same circumstances in both files.

And at this time, we move this Honorable Court to consolidate for trial purposes.

.        .        .        .        .

THE COURT: And both of the Informations arise out of the precise subject matter?

MR. GLICKSMAN: That is correct, Your Honor.

.        .        .        .        .

MR. SHERMAN: I will oppose that motion, Your Honor.

It is my position in representing both of these men that defenses as to both of them differ. And I would not be able to properly defend both of them in the same action, trying them at the same time.

Now, Donald Smith waived examination. Abraham Allen had an examination conducted.

.        .        .        .        .

THE COURT: Did you represent both of them at that time?

MR. SHERMAN: No, Your Honor. They were separate cases.

THE COURT: I said, did you represent both of them at the time of the Examination; were you their lawyer at that time?

MR. SHERMAN: Yes, Your Honor.

.        .        .        .        .

MR. SHERMAN: They don't know each other. They have never seen each other. One has a defense of just being a bystander. One says he was not there at all.

And I would oppose any motion to consolidate these cases. Because to defend both these men at the same time would be almost impossible.

THE COURT: I don't know—I can't understand what the "impossibility" addresses itself to.

May I ask this, Mr. Glicksman, have you had any discussion with Mr. Sherman previously about consolidation?

MR. GLICKSMAN: No, Your Honor, up until—I was aware of Mr. Sherman's anticipated objection.

.        .        .        .        .

THE COURT: (to the police officer in charge) Did I understand you had some discussion with Mr. Sherman or someone in the Prosecutor's Office had discussion with Mr. Sherman about consolidation?

OFFICER RANDOLPH: Yes, ma'am.

THE COURT: What was that?

MR. SHERMAN: We agreed—for trial purposes we agreed to consolidate the cases until I found out that—

THE COURT: (Interposing) When was that discussion?

OFFICER RANDOLPH: At the Examination on Mr. Allen. It was on April 27th.

.        .        .        .        .

THE COURT: When was Mr. Smith's Examination?

OFFICER RANDOLPH: February 29th.

THE COURT: On April 27th, which was two months subsequent to the first Examination which was held, Mr. Sherman agreed that the cases could be consolidated, is that correct?

OFFICER RANDOLPH: Yes, ma'am.

THE COURT: Mr. Sherman.

MR. SHERMAN: That is true, Your Honor. At the time, I had no idea that the defenses would be exclusive. Because Mr. Smith waived Examination.

THE COURT: Well, he waived Examination. And I would assume you had discussed the matter with him. So you knew that a waiver would either be appropriate or inappropriate. And you thought the waiver was appropriate. I assume you had been advised as to what various matters were concerned. And if one says he was not there, I do not know what you mean when you say the defenses are mutually "exclusive".

But over and above and beyond that, Mr. Sherman, you have been representing these men for the past three or four months. And yet you come to the trial date, when you have had all kinds of time to make preliminary motions, and you have made none. And I will tell you right out that I think this is just for purposes of delay. You have had ample opportunity to address the Court in this regard, if there was any necessity for doing it. Here you come on the day all the witnesses have been called and everyone is prepared to move.

So I am going to deny your motion.

Now, is there anything further before we call the jury?

MR. GLICKSMAN: Your Honor, as I understand it, it is a motion for the People.

THE COURT: I am sorry.

The People's motion is granted.

Is there anything further before we call the jury?

.     .     .     .     .

MR. SHERMAN: Your Honor, if it please the Court, Defendant Donald Smith wishes to address the Court.

.     .     .     .     .

DEFENDANT SMITH: ...

Under my own circumstances, I am afraid to be tried in this court room.

THE COURT: I don't understand what you mean.

DEFENDANT SMITH: I would like to have my trial in any other court room instead of this one. Because I have a feeling injustice would be served here upon me. I would not be fairly tried in my behalf.

THE COURT: Mr. Smith, sometimes you—

Now, when you were talking to me, I was looking at you. And when I am talking to you, I expect you to look at me.

You don't know anything about this court room. You have never been in here before. And I didn't choose to have you here in this court. Certain cases are assigned to certain court rooms. And when they are assigned, Mr. Smith, they are tried. And you will have the same opportunity that anyone else has in here. You will have the opportunity to have a fair trial. The Court will be fair to you. And there is an obligation on your part to be equally fair. And I can guarantee you, Mr. Smith, you will have an absolutely fair trial. The only thing you have to worry about is yourself.

DEFENDANT SMITH: That is what I am worried about, myself.

THE COURT: I am talking about you worry about how you behave. You don't have to worry about the Court according you every constitutional right which you are entitled.

Mr. Glicksman, Mr. Sherman, the jury will be here in about five minutes.

THE COURT: Mr. Sherman, would you ask your clients to step forward, please.

Would you step up, please.

Which of you is Mr. Allen?

DEFENDANT ALLEN: I am.

THE COURT: And you are Mr. Smith?

DEFENDANT SMITH: Yes.

THE COURT: Mr. Allen and Mr. Smith, I am not making any accusations. But I have some feeling that the two of you are entirely dissatisfied about something. And there is that possibility that you might decide to do something or conduct yourselves in a manner that is not appropriate. I am not making any accusations. I just want to tell you something. They have chairs here. They have handcuffs here. They have tapes. They have all kinds of things. You can be handcuffed to chairs and get your mouths taped and all that sort of thing. I don't approve of that. I don't approve of

that at all. I think it demeans a defendant. And I think it demeans the court room and demeans the whole process. I just want to advise you how I feel about it. And if anybody does not conduct themselves appropriately in the court room, they can waive that right to be here. You have a constitutional right to be here and certain other constitutional rights. And you can avail yourselves of all of them. And the Court wants to see to it that you get all the constitutional rights. But if anything happens in the court room that does not comport with the standard of conduct we are supposed to have in here, I want you to understand you will be excluded. You won't be tied up, taped up. And you won't be handcuffed. You will be sent back to the bullpen. And that will be all there will be to it. You won't be able to ask to come again or say, "I will be all right from now on." Once it is done, there will be no more defendants in the court room. I want you to understand that clearly. I am not accusing you. But this thought has come to my mind. And I simply wanted you to understand what we are expecting in terms of conduct in the court room. We will do everything that is required of us. And all we ask you to do is those few things required of you.

May I assume we are ready to proceed, Mr. Sherman and Mr. Glicksman?

MR. GLICKSMAN: The People are ready, Your Honor.

MR. SHERMAN: Ready, Your Honor.

DEFENDANT SMITH: I would like to say is it possible at any time that I can get a change of lawyer?

THE COURT: There is no possibility.

DEFENDANT SMITH: I refuse to be tried with this man.

THE COURT: You can't refuse.

DEFENDANT SMITH: How can we be tried on the same case. I don't have anything to do with him.

THE COURT: It is alleged that the two of you participated. I don't know whether it is true or not. I know nothing about this lawsuit. That is what the People alleged.

That is what the Information says. I know nothing about it. I don't know if you know each other or if you were there. I don't know one thing about this lawsuit. But this is what the People say. And that is what the subject of the lawsuit is. And the lawsuit is going to be tried. If you weren't there, then you weren't there. Then, maybe that will be demonstrated. I don't know what your defense is. That is what the People allege. And that is the way the case is going to be tried.

DEFENDANT SMITH: I have not even conferred with my lawyer. I have not seen him but twice.

THE COURT: I don't know anything about that. All I know is your lawyer is a competent lawyer. I have seen him many times before. And I know he is able to try a lawsuit. That, I do know.

Is there anything further?"

### D.

The trial then proceeded with both defendants being represented by the same lawyer.

In his opening statement the assistant prosecutor linked the two defendants to the scene of the crime by the eyewitness testimony he said he intended to offer. Of particular significance was the emphasis he laid on their joint enterprise by the phrase "the defendants" and the references to the fact they were "sitting at counsel table".

The defendants' lawyer did not make an opening statement initially.

Several witnesses identified the defendants as the persons who committed the robbery in a grocery store. Another witness testified he saw the defendants divide up the money in his apartment. A police officer testified he found a hat in the apartment house identified as being worn by petitioner at the robbery. Cross-examination of each of the witnesses was relatively brief; no effort was made to challenge their testimony.

The defendants' lawyer's opening statement following the prosecutor's proofs cov-

ered less than two pages of transcript. He said only he would put each defendant on the witness stand and let them tell their respective stories and the jury could judge who was telling the truth.

Allen testified in narrative form that while he was in the grocery store at the time of the robbery he was only a spectator. He was not asked on direct examination if he knew petitioner. On cross-examination Allen said the first time he saw petitioner was when they came to court for trial.

Petitioner denied being present at the scene of the robbery saying he was somewhere else. He denied knowing Allen, likewise saying he met him for the first time when they came to court. Neither Allen nor petitioner offered any other testimony on their behalf.

Final argument on both sides was relatively brief; in the case of the defendants' lawyer it was perfunctory. He simply argued reasonable doubt and never referred to petitioner. The assistant prosecutor emphasized the eyewitness testimony and called the jury's attention to the fact that no alibi witnesses were offered to support petitioner's testimony.

### E.

From a review of the record summarized above this Court finds:

1. The procedures in Recorder's Court allowed the same lawyer to be appointed the two defendants both charged with the same crime at separate times without the appointing judges or the prosecutor's office knowing it. Here it was not until the day of trial the dual appointment was brought to the attention of the trial court and the motion to consolidate the two cases made. The trial court gave only cursory attention to the dual representation and was concerned only with the question of delay.

2. The defendants' lawyer resisted the motion to consolidate two cases the effect of which was to require him to represent the two defendants in a single trial against his express desire. Effectively the same lawyer was appointed to represent the two defendants in the same trial without any inquiry as to the possibility of a conflict of interest.

3. Petitioner himself was aware of the difficulty he would face in being represented by the same lawyer as his co-defendant and vigorously protested to the trial court being so represented. The trial court made no inquiry and in particular did not discuss the matter with either defendant.

4. While the defenses were not inconsistent they were distinct. Allen acknowledged a robbery had taken place but claimed he was a victim rather than a perpetrator. Petitioner denied being present and therefore implicitly denied any knowledge of the events at issue. He also denied knowing Allen.

5. Since Allen admitted he was on the premises and petitioner denied he was present vigorous cross-examination of eyewitnesses could have had the effect of strengthening one of the defendant's defenses while weakening the other's.

6. The trial judge gave no consideration to the possibility of a conflict of interest and made no examination of the circumstances that brought the situation about. Likewise the assistant prosecutor showed no concern.

7. The assistant prosecutor linked the two defendants and made repeated but implicit reference to the fact they had the same lawyer.

8. For approximately four trial days petitioner who denied any knowledge of the crime charged sat at the same table with a co-defendant who acknowledged a crime had been committed and with the same lawyer representing both of them. The jury was not told the circumstances of the joint representation.

### IV.

The Michigan Court of Appeals disposed of petitioner's contention with regard to effective counsel summarily, saying:

"Each defendant was arrested on a separate warrant issued on a separate complaint. The same defense counsel was

appointed for each defendant. Separate informations were filed against each defendant and they were arraigned separately. On the day of trial, the trial judge granted the prosecutor's motion to consolidate for trial over defendants' objection. This action was not error, *People v. Schram*, 378 Mich. 145 [142 N.W.2d 662] (1966), but each defendant now contends that his constitutional right to counsel was infringed thereby. The basis for the contention is that the individual defenses were so exclusive that one lawyer could not effectively represent both defendants. The point argues well, but it fails to persuade us that defendants are entitled to appellate relief for the reason that the record does not demonstrate that actual prejudice resulted from the consolidation."

42 Mich.App. 195, 198, 201 N.W.2d 353.

The citation to *People v. Schram*, 378 Mich. 145, 142 N.W.2d 662 (1966) is inexplicable. *Schram* involved a claim that a trial court lacked the power to consolidate two cases into a single trial under Michigan law where the defendants were separately informed against. There the two defendants were represented by separate counsel. The Supreme Court of Michigan held that the test for consolidation was whether the defendants joined together for trial were prejudiced.

### V.

Three United States Supreme Court cases are important to a consideration of the question here: was petitioner denied effective assistance of counsel because of the dual representation and the manner in which the trial judge dealt with the situation when it was brought to her attention.

In *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 1222 (1942), the Supreme Court held that effective assistance of counsel means that such assistance must "be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests" *Id.* at 70, 62 S.Ct. at 464, and that "the right to have assistance of counsel is too fundamental and absolute to allow courts to

indulge in nice calculations as to the amount of prejudice arising from its denial" *Id.* at 76, 62 S.Ct. at 467.

In *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the Supreme Court held that failure to make inquiry in face of improper dual representation required reversal. This was a case in which codefendants in a state court trial were represented by the same lawyer. Motions were made a few weeks before trial and again before the jury was empanelled for appointment of separate counsel based on the representation conflicting interests were being represented. The motions were denied; the Supreme Court of Arkansas upheld the convictions on the grounds no actual conflict of interest or prejudice was shown. The Supreme Court reversed the convictions on the grounds that the defendants were denied the effective assistance of counsel because the trial judge failed to take adequate steps to ascertain whether the representations as to conflicts of interest were correct. The Supreme Court said:

"Here trial counsel by pre-trial motions on August 13 and September 4 and by his accompanying representations made by an officer of the court, focused explicitly on the probable risk of a conflict of interest. The judge then failed to either appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel. We hold that the failure, in the face of the representations made by counsel weeks before trial and again before the jury was empanelled deprived petitioners of the guarantee of "assistance of counsel"."

435 U.S. at 484, 98 S.Ct. at 1178 (footnote omitted).

In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) the Supreme Court held first that unless a trial court knows or reasonably should know that a particular conflict exists the court need not initiate an inquiry, and second that in order to establish a violation of the Sixth Amendment a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affect-

ed his lawyer's performance. In so holding the Supreme Court said:

"*Holloway* reaffirmed that multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest. *See*, 435 U.S. at 482 [98 S.Ct. at 1177]. Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly injured his right to a fair trial. But unless the trial court fails to afford such an opportunity, a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel."

*Id.* at 348, 100 S.Ct. at 1718.

██ In summary then, *Glasser*, establishes that where a single lawyer represents multiple defendants and a conflict of interests is shown the right to effective assistance of counsel under the Sixth Amendment has been denied. *Holloway* stands for the proposition that the Sixth Amendment requires a state court to investigate timely objections to multiple representation and a failure to do so results in the denial of effective assistance of counsel. *Cuyler* stands for the proposition that there is no affirmative duty to inquire into a possible conflict of interest and that a defendant must demonstrate that an actual conflict of interest adversely affected the adequacy of representation unless a trial court fails to afford the opportunity to do so.

There are numerous lower court decisions supporting and expanding on these basic principles, all of which are applicable here: *Colon v. Fogg*, 603 F.2d 403 (2nd Cir. 1979), says the trial judge must explore with the defendant personally the inherent potential for a conflict of interest in a joint representation; *United States v. Mavrick*, 601 F.2d 921, 929 (7th Cir. 1979), stands for the same proposition: "Thus, upon defense counsel's representation to the court that a conflict of interests could impair the defense, affirmative trial court response is required." *United States v. Georvassilis*, 498 F.2d 883 (6th Cir. 1974), holds in similar fashion that where the possibility of inconsistent defenses is brought to its attention the trial court should pursue it; and before that *United States v. Burkeen*, 355 F.2d 241 (6th Cir. 1966), said the same thing: the court "explored carefully the possibility of any conflict of interest between the defendants which would preclude their court-appointed attorney from providing adequate representation for both of them."

██ Lastly, the question of harmless error is not involved in these kinds of cases: *McKeldin v. Rose, et al*, 631 F.2d 458 (6th Cir., 1980).[1]

---

1. The rules relating to the trial judge's and the lawyers' obligations are not new. *See*: American Bar Association Standards Relating To The Administration Of Criminal Justice: *Standards Relating To The Function Of The Trial Judge*; Approved Draft, 1972:

Part III. Pretrial Duties.
3.4 Protecting the accused's right to counsel.

.     .     .     .     .

(b) Whenever two or more defendants who have been jointly charged, or whose cases have been consolidated, are represented by the same attorney, the trial judge should inquire into potential conflict which may jeopardize the right of each defendant to the fidelity of his counsel.

and

*Standards Relating To The Prosecution And Defense Function*; Approved Draft, 1971:

Part III. Lawyer Client Relationship.
3.5 Conflict of interest.
(a) At the earliest feasible opportunity defense counsel should disclose to the defendant any interest in or connection with the case or any other matter that might be relevant to the defendant's selection of a lawyer to represent him.

(b) Except for preliminary matters such as initial hearings or applications for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation.

.     .     .     .     .

## VI.

Defendant argues there was a record inquiry into the issue of joint representation; that the trial judge's ruling there was no conflict of interests such as to adversely affect the defendants' lawyer's performance was correct and if the inquiry was incomplete this court should conclude on a review of the whole record there was no conflict of interests. Defendant assumes the claim of conflict of interests was based solely on the claim of mutually exclusive defenses.

### A.

The Court starts with the finding there was an objection to the joint representation not only by the lawyer but by petitioner himself. The question was squarely put to the trial court, and under the circumstances of this case the objection was timely.

It is somewhat disingenious for petitioner's lawyer to have suggested at the evidentiary hearing there was no conflict *per se* in the representation but only in the representation in the same trial and until the assistant prosecutor moved to consolidate the two cases they were separate cases headed for separate trials and that only after the trial court ordered consolidation did the question of dual representation become paramount. More importantly though here "... The court may fairly be said to be responsible for creating a situation which resulted in the impairment of those rights". *Glasser v. United States*, 315 U.S. 60 at 71, 62 S.Ct. 457 at 465, 86 L.Ed. 1222 (1942).

Additionally the Court, on the record before it, does not accept defendant's assertion there was a record inquiry sufficient to meet the test of *Holloway* once the question arose. The lawyer in his opposition to the motion to consolidate told the trial court the defenses of the two defendants differed and that he would not be able to properly defend both of them in the same case. He went on to tell the trial court they didn't know each other; that they had never seen each other; and that they had different defenses, i.e., one claimed he was a bystander, the other claimed he wasn't there.

The trial court rather than following up with questions to the lawyer or to the two defendants simply turned to the assistant prosecutor and the police officer present to determine how long the lawyer had known of the possibility of consolidation of the two cases. Apparently once satisfied that the lawyer had been aware of the possibility of the motion for consolidation for some time she simply concluded her inquiry by saying she didn't understand what the lawyer meant by saying the defenses were mutually exclusive, accused him of delay and then mistakenly denied what she thought was his motion for separate trials. At that point it became necessary for the assistant prosecutor to tell the trial court it was his motion for consideration that was before her and thereupon the trial court granted it.

When petitioner himself protested the trial court admonished him not to worry about a fair trial and then warned the defendants in severe terms against making any trouble. In response to petitioner's statement "I have not even conferred with my lawyer. I have not seen him but twice" the trial court said:

"I don't know anything about that. All I know is your lawyer is a competent lawyer. I have seen him many times before. And I know he is able to try a law suit. That, I do know."

In the words of *Holloway*:

"So far as we can tell from this record, the trial judge cut off any opportunity of defense counsel to do more than make conclusory representations."

435 U.S. 475, 484, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426.

The steps taken by the trial court to determine whether there was a conflict of interest by the dual representation, particularly in the face of the fact that defendants were represented by counsel not of their choice and in the face of petitioner's protes-

tation, were patently insufficient and denied petitioner his right to the effective assistance of counsel under the Sixth Amendment.

### B.

■ Assuming for the sake of argument that the trial court made the necessary inquiry, the Court finds that there was a conflict of interest that adversely affected petitioner's lawyer's performance.

The reasons for this conclusion are twofold.

First, there can be no doubt that when two defendants are tried together on a charge they participated together in an armed robbery and then are forced by the circumstances of joint representation not of their own choosing to sit throughout trial at counsel table with a single lawyer a claim they did not know each other is almost surely doomed to failure.

While this was not a blame shifting situation, *Foxworth v. Wainwright*, 516 F.2d 1072 (5th Cir. 1975), or a situation where irreconcilable defenses were asserted *United States v. Mota*, 598 F.2d 995 (5th Cir. 1979), it was a situation where credibility was important. There is no way a jury could be expected to even begin to give credence to the claim the defendants did not know each other and met only for the first time when the trial began, when they were both represented by the same lawyer; when the same lawyer was speaking for each of them; when they sat together with the same lawyer throughout trial with no explanation.

Second, the lawyer certainly did less than an adequate job in his representation of petitioner, so much so that a serious argument could be made that he incompetently represented petitioner. *Corsa v. Anderson*, 443 F.Supp. 176 (E.D.Mich.1977). The adequacy of representation could also be seriously questioned in light of the failure of the lawyer to take action when he received the second appointment and his later failure to do anything when he was told by the assistant prosecutor there was going to be a motion to consolidate the two cases and his still later failure to do anything when he received the notices of trial.

Petitioner's lawyer made only a cursory opening statement and barely made a closing argument. He hardly cross-examined the identification witnesses. Allen, the co-defendant, testified in narrative form, telling an almost unintelligible story. No attempt was made to explain or support petitioner's alibi. There was no explanation of why he, the same lawyer, was representing two men who said they didn't know each other. The lawyer admitted a robbery had taken place, an unnecessary admission at least as far as petitioner was concerned. Certainly the representation of both defendants adversely affected the adequacy of representation of petitioner. There is simply no other reason to explain the lawyer's approach short of labeling him incompetent.

### C.

■ The State suggests that the lawyer's assertion at the evidentiary hearing that he believed Allen was going to testify that he saw petitioner at the scene and that his concern over Allen's testimony was the basis for his claim to the trial court that he could not represent the two of them is an after-thought, "a Janus-faced posture". On this basis the State suggests this Court should follow the Supreme Court's admonition in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) that the trial in state court is the decisive and portentious event and no rule should be adopted which detracts from that principle. The Court accepts the admonition. However, this is not such a case. Whatever reasons the lawyer now gives for his asserting to the trial court that the defenses were inconsistent does not detract from the fact that the performance of petitioners' lawyer at trial was less than satisfactory and this inadequacy of performance was caused by the need to represent petitioner and Allen at trial under circumstances where to be effective he should have represented only one of them. The trial court's action in consolidating the two cases seriously disad-

vantaged petitioner's lawyer and the quality of his representation.

## VII.

The State's argument that the petition must be dismissed for failure to comply with Rule 9(a) of the Rules Governing § 2254 cases is also without merit. Rule 9(a) provides:

"Delayed petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred."

■ The State, in claiming prejudice, relies solely in support on a note of the advisory committee that a delay of more than five years after the judgment of conviction is presumed to be prejudicial. That restriction is not a part of the Rule.

"[A] rule which would permit a court to dismiss an action for habeas relief without any consideration of the equities presented renders the habeas corpus process inadequate to test the legality of a person's conviction and, thereby, constitutes a prohibited suspension of the writ
. . . .

A more proper interpretation of Rule 9(a), consistent with the Suspension Clause is that rather than imposing a statute of limitations, the Rule invokes the equitable doctrine of laches. As applied here, the doctrine posits a two-pronged test. First, the state must appear to have been prejudiced in its ability to respond to petitioner's claims. Second, the petitioner must be given the opportunity to meet or rebut the apparent prejudice to the state, or to show that whatever prejudice the state has suffered would not have been avoided had the petition been filed earlier."

*Davis v. Adult Parole Authority*, 610 F.2d 410, 414 (6th Cir. 1979).

The State has presented nothing in support of a claim of prejudice.

## VIII.

The length of time it has been on this Court's docket has been occasioned by the difficulties of assessing the state trial judge's conduct of the trial as well as the performance of the lawyer. This Court has previously acknowledged that a federal judge should review with care a state court conviction. *Bercheny v. Johnson*, 481 F.Supp. 1165 (E.D.Mich.1980).

■ The similarity here to the circumstances of *Glasser*, and *Holloway*, once the full story of the dual representation is told, is clear. The trial judge gave only prefunctory consideration to the question of joint representation. So convinced was she that it was being raised to delay trial, she paid no attention to petitioner's objections. The circumstances of trial adversely affected the quality of representation. Petitioner was denied the effective assistance of counsel.

The petition for habeas corpus will be GRANTED unless the State of Michigan on its own motion moves to set aside petitioner's conviction and grants a new trial within sixty days hereof.

SO ORDERED.