Donald SMITH, Petitioner-Appellee,

v.

Charles E. ANDERSON,
Respondent-Appellant.

No. 81–1124.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 9, 1981.

Decided Sept. 13, 1982.

Frank J. Kelley, Atty. Gen. of Mich., Lansing, Mich., Andrea L. Solak, Asst. Pros. Atty., Detroit, Mich., for respondent-appellant.

David M. Lawson, Southfield, Mich., (Court-appointed), for petitioner-appellee.

Before JONES, Circuit Judge, and WEICK * and PHILLIPS, Senior Circuit Judges.

NATHANIAL R. JONES, Circuit Judge.

Petitioner, Donald Smith, individually and through his attorney, objected to the Wayne County Prosecutor's day-of-trial motion to consolidate his case with that of another defendant, Abraham Allen, charged with the same offense and represented by the same court-appointed attorney. Smith's appointed counsel, Jerrold Sherman, represented to the court that he could not effectively represent both Smith and Allen in a joint trial due to the risk of conflicting interests between the two de-

fendants. The district court held that by requiring joint representation at the consolidated trial over petitioner's timely objection, Smith was denied effective assistance of counsel. District Judge Avern Cohn ordered the writ of habeas to issue unless the state voluntarily determined to retry Smith before a date certain. *Smith v. Anderson*, 505 F.Supp. 642 (E.D.Mich.1980). We affirm.

## I.

On January 27, 1971, three men entered and robbed a Big Star Market in Detroit, Michigan. During the robbery a store employee and the store security guard were shot and wounded.

Two days after the incident a warrant was issued and petitioner Smith was arrested for armed robbery. On February 1, 1971, Jerrold Sherman was appointed to represent Smith. Smith waived preliminary examination. He was arraigned upon information on February 11, 1971.

On April 22, 1971, Abraham Allen was apprehended. Allen had a preliminary examination, was bound over for trial and was charged, under a separate information, with the January armed robbery of the Big Star Market. Sherman was appointed to represent him.

Smith and Allen received different dates for trial in the Recorder's Court. These dates were later changed by notice of the court and set for June 16, 1971, before the presiding judge.

On that date the cases were both reassigned to be tried by Judge Ford.[1] Before the jury was seated, the prosecuting attorney moved to consolidate the cases. Sherman rose in opposition to the prosecutor's motion and began a colloquy concerning the joint representation:

MR. SHERMAN: It is my position in representing both of these men that defenses as to both of them differ. And I

---

* Judge Weick retired from regular active service and became a Senior Circuit Judge on December 31, 1981.

1. Sherman testified that it was the practice in the Recorder's Court to assign all cases to the presiding judge who would then reassign the case on the day of trial to an available judge.

would not be able to properly defend both of them in the same action, trying them at the same time.

Now, Donald Smith waived examination. Abraham Allen had an examination conducted.

\*     \*     \*     \*     \*     \*

THE COURT: Did you represent both of them at [the time of Allen's preliminary examination]?

MR. SHERMAN: No, Your Honor. They were separate cases.

THE COURT: I said, did you represent both of them at the time of the Examination; were you their lawyer at that time?

MR. SHERMAN: Yes, Your Honor.

\*     \*     \*     \*     \*     \*

MR. SHERMAN: They don't know each other. They have never seen each other. One has a defense of just being a bystander. One says he was not there at all.

And I would oppose any motion to consolidate these cases. Because to defend both these men at the same time would be almost impossible.

THE COURT: I don't know—I can't understand what the "impossibility" addresses itself to.

May I ask this, Mr. Glicksman, have you had any discussion with Mr. Sherman previously about consolidation?

MR. GLICKSMAN: No, Your Honor, up until—*I was aware of Mr. Sherman's anticipated objection.*

\*     \*     \*     \*     \*     \*

THE COURT: (to the police officer in charge) Did I understand you had some discussion with Mr. Sherman or someone in the Prosecutor's Office had discussion with Mr. Sherman about consolidation?

\*     \*     \*     \*     \*     \*

MR. SHERMAN: We agreed—for trial purposes we agreed to consolidate the cases until I found out that—

THE COURT: (Interposing) When was that discussion?

OFFICER RANDOLPH: At the Examination on Mr. Allen. It was on April 27th.

\*     \*     \*     \*     \*     \*

THE COURT: When was Mr. Smith's Examination?

OFFICER RANDOLPH: February 29th.

THE COURT: On April 27th, which was two months subsequent to the first Examination which was held, Mr. Sherman agreed that the cases could be consolidated, is that correct?

\*     \*     \*     \*     \*     \*

MR. SHERMAN: That is true, Your Honor. At the time, I had no idea that the defenses would be exclusive. Because Mr. Smith waived Examination.

THE COURT: Well, he waived Examination. And I would assume you had discussed the matter with him. So you knew that a waiver would either be appropriate or inappropriate. And you thought the waiver was appropriate. I assume you had been advised as to what various matters were concerned. And if one says he was not there, I do not know what you mean when you say the defenses are mutually "exclusive".

But over and above and beyond that, Mr. Sherman, you have been representing these men for the past three or four months. And yet you come to the trial date, when you have had all kinds of time to make preliminary motions, and you have made none. And I will tell you right out that I think this is just for purposes of delay. You have had ample opportunity to address the Court in this regard, if there was any necessity for doing it. Here you come on the day all the witnesses have been called and everyone is prepared to move.

So I am going to deny your motion.

Now, is there anything further before we call the jury?

MR. GLICKSMAN: Your Honor, as I understand it, it is a motion for the People.

THE COURT: I am sorry.

The People's motion is granted.

(Emphasis added)

Defendant Smith then personally requested a different attorney to represent him in the trial. His request was denied.

After the prosecution presented its case, defense counsel made a brief opening argument and only the defendants testified for the defense. The jury returned a verdict of guilty as to both Allen and Smith.

On direct appeal, the Michigan court of appeals affirmed, finding no actual prejudice due to the joint representation. The court did not consider the trial judge's failure to explore or credit Smith's opposition to consolidating his trial with that of Allen. *People v. Allen*, 42 Mich.App. 195, 201 N.W.2d 353 (1972), *leave to appeal denied sub nom. People v. Smith*, 389 Mich. 769 (1973).

## II.

The district court held an evidentiary hearing on Smith's petition for habeas corpus. Judge Cohn heard testimony from Sherman, and a representative of the Wayne County Prosecutor's Office interpreted the court records and the prosecutor's files in the case.

Sherman explained that when he expressed his assent to the idea of consolidation on the day Allen was bound over for trial he did not have a sufficient familiarity with the defenses of each defendant to recognize the possibility of conflict. The tentative nature of the agreement and its subsequent abandonment is indicated by two important factors. First, it was neither reduced to writing nor memorialized on the trial court's docket.[2] Second, a month before the ultimate trial date, Sherman expressed his opposition at an informal pretrial conference at the prosecutor's office when the prosecutor broached the subject of consolidation. The prosecutor acknowl-

edged that he was aware of Sherman's opposition to the proposal to consolidate when the day-of-trial motion to consolidate was put before the trial court. *Ante* at [61–62].

Both before and after Sherman's expressed opposition to the prosecutor's proposed consolidation in mid-May, 1971 until the day of trial on June 16, 1971, no motion, either oral or written, nor any stipulation pertaining to consolidation, was lodged with the trial court by the prosecutor.

## III.

■ The foregoing makes manifest that the district court correctly found Smith's objection based on conflicting interests to be timely. The trial judge's conclusion that defense counsel was dilatory in his failure to more promptly bring his views before the bar was founded upon the erroneous premise that the cases were already consolidated and defendant had moved to sever. *Ante* at [61]. In fact, it was the prosecutor who delayed more than a month, making his last-minute motion immediately before the jury was to be impaneled.

■ The predicament of defendants whose counsel is encumbered by a conflict bedeviling his or her advocacy has troubled the federal courts for at least the last forty years. *See, e.g., Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Due to the attorney-client privilege, counsel for the defendant is normally the individual best able to evaluate whether he may represent more than one defendant with his effectiveness unimpaired by the duality of his trial allegiance. Accordingly, the rule developed by the federal courts in this area afford the trial attorney's judg-

2. The evidentiary hearing revealed that Sherman need not have believed a joint trial would occur absent a notice and a journal entry to that effect. Each defendant's case bore a different case number. Each defendant was separately arrested, arraigned and a separate information was prepared for each. As noted by the prosecutor, ordinarily the judge that appointed Sherman to represent Allen would not have known that Sherman had been appointed to represent Smith. Further, two other defendants arraigned with Allen and charged with the same offense each had separate counsel ap-

pointed to represent them, allowing Sherman to presume that a single appointed counsel would not represent more than one defendant at any trial.

Moreover, since it was Sherman who expressed his agreement at Allen's arraignment, the prosecutor acknowledged that the state cannot prove that Smith was aware of his counsel's statement at any time in advance of trial. *See Glasser v. United States*, 315 U.S. 60, 69–71, 62 S.Ct. 457, 464–465, 86 L.Ed. 680 (1942).

ment near decisive weight in the calculus of conflict when counsel's perception of a conflict is brought to the court's attention. *Holloway v. Arkansas*, 435 U.S. 475, 485–86, 98 S.Ct. 1173, 1179, 55 L.Ed.2d 426 (1975). In the realm of the Sixth Amendment, when an objection to joint representation is properly raised and dismissed without a searching review, which can demonstrate that counsel's fear for his effectiveness is groundless, a constitutional violation occurs. *Holloway v. Arkansas, supra; Glasser v. United States, supra; accord, Cuyler v. Sullivan*, 446 U.S. 335, 347, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980).[3]

As this court has stated: "A criminal defendant has a constitutional right to expect during trial that his attorney will, at all times, support him, never desert him, and will perform with reasonable competence and diligence." *Wiley v. Sowders*, 647 F.2d 642, 651 (6th Cir.), *cert. denied*, 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981). *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), held that the right to effective assistance of counsel was so firmly rooted in our notions of justice as to be incorporated in the process that is due all persons under the Fourteenth Amendment. It recognized that the welfare of the client, as well as the adversarial system and orderly judicial procedure all require counsel to have loyalty that is unimpaired by either undue judicial intervention or other constraints upon his ability to freely and vigorously shape and present a client's defense.

Flowing naturally from these elemental principles are the holdings of *Holloway v. Arkansas* and *Glasser v. United States* that counsel simply may not be required by the court to undertake joint representation without a convincing showing that counsel's protestations that such multiple representation is fraught with potential conflicts of interest are groundless. *Holloway*, 435 U.S.

at 484, 98 S.Ct. at 1178; *Glasser*, 315 U.S. at 75–76, 62 S.Ct. at 467; *accord, Cuyler v. Sullivan*, 446 U.S. at 347, 100 S.Ct. at 1717 (1980); *see Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974).

The similarity of *Holloway v. Arkansas* to the facts before the court is remarkable. Holloway and his two co-petitioners were represented at trial and on appeal by a single court-appointed attorney, Harold Hall. Several days after the cases were consolidated for trial, at a time when trial was several weeks away, Hall moved the court to appoint separate counsel due to the possibility of a conflict of interest. 435 U.S. at 477, 98 S.Ct. at 1175. Hall renewed his motion on the day of trial before the jury was impaneled. In the prosecution's case, no witness identified all three defendants as participants in the charged crimes; each petitioner was identified with varying frequency and for varying activities by one or more of the four *res gestae* witnesses. *Id.* at 478, 98 S.Ct. at 1175. The co-defendants all chose to testify at trial. Hall renewed his motion based upon the possible conflict of interest and his inability to cross-examine. The trial judge was unpersuaded by Hall's contentions of possible conflict and denied his motions for separate counsel after the most cursory consideration. *See, e.g., id.* at 478–79, 98 S.Ct. at 1175–1176. Ultimately the testimony of the defendants contained no apparent conflicts. Finding that the possibility of conflict was brought home to the trial judge who nonetheless "failed either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel," the Court held that the Sixth Amendment was violated. *Id.* at 484, 98 S.Ct. at 1178.

The similarities between the co-defendants in *Holloway* and petitioner Smith and his co-defendant Allen herein begin with the timing of their objections and continue

---

**3.** This concern has prompted a per se rule by courts in certain circumstances. *See People v. Chacon*, 69 Cal.2d 765, 775, 447 P.2d 106, 112, 73 Cal.Rptr. 10, 16 (1968) (per se rule that joint representation, in case where jury determines whether or not to impose death penalty, vio-

lates Sixth Amendment); Lowenthal, *Joint Representation in Criminal Cases: A Critical Appraisal*, 64 Va.L.Rev. 939 (1978) (hereinafter *Lowenthal*) (per se rule advocated). *But see* Fed.R.Crim.P. 44(c) (trial judge must inquire into conflicts).

in an undeviating path through each salient fact. Petitioner's counsel, Jerrold Sherman, protested the prosecutor's proposal to consolidate nearly a month before trial and brought the possible conflict to the trial judge's attention at the day of trial, when the prosecutor first formally moved that Allen and Smith be tried together.

Six *res gestae* witnesses testified. The store security guard implicated Allen and another suspect, Jeff Atkins, who had fled jurisdiction, but did not identify Smith. A store clerical employee testified that Allen threatened him with a gun. The store manager, shot in the hold up, identified Smith but did not know whether he was a customer or a robber. The store cashier testified that Allen took the contents of the cash register at gunpoint. She too made no identification of Smith. A store customer was the only witness to implicate Smith. She testified that Smith and Allen shot the store manager and that she was abducted by them and induced to be silent. Atkins' father testified that he was present at his apartment when Allen, Smith and Atkins and several women arrived with money and food stamps.

Allen and Smith each took the stand for the defense. Allen testified that he was a bystander. Smith testified that he was elsewhere when the Big Star Market was robbed.

The reaction of the trial judge to counsel's objections is quoted, *ante* at [61–62]. No adequate steps were undertaken to determine whether the risk of conflict was too remote to require appointing separate counsel.[4]

The state argues that counsel's expression of the possible conflict could have been more detailed and that under the circumstances the trial judge's terse reply was sufficient. Like *Holloway*, we find that the court's ruling "hardly encouraged pursuit of the separate-counsel claim," 435 U.S. at 485, 98 S.Ct. at 1179, and the Supreme Court's point that greater detail by counsel in his argument risked violation of the duty of confidentiality to his client is equally applicable here. *Id.*

An attorney's timely statement that a conflict inheres in joint representation is a grave one requiring meticulous consideration in the trial. His clients have the right to protection of their confidences and the privilege to remain silent while retaining the presumption of innocence. The court and prosecutor are limited in their inquiries into the concern of defense counsel by these prerogatives of the defense.[5] Under these circumstances the defense attorney is viewed in his capacity as an officer of the court and his statements that a conflict exists, pursuant to his ethical obligation, though conclusory, are made as if upon oath. *See Holloway, supra* at 485–87, 98 S.Ct. at 1179–1180. "When a considered representation regarding a conflict in clients' interests comes from an officer of the court, it should be given the weight commensurate with the grave penalties risked for misrepresentation." *Id.* at 486 n.9, 98 S.Ct. at 1179 n.9.[6]

Because certain benefits of a single defense counsel may be imagined, *see, e.g., Glasser v. United States*, 315 U.S. at 92, 62 S.Ct. at 475 (Frankfurter, J. dissenting), a

---

4. The trial court learned of counsel's belief that a conflict existed when he rose in opposition to a prosecution motion to consolidate. While his arguments were contextually couched in response to consolidation, the tenor of his argument that a conflict of interest arose in his representation is unmistakable and was so recognized at trial.

5. As in *Holloway*, we need only note the thorny issues raised by a judge's inquiry of counsel pertaining to concerns and problems in his defenses, especially since the judge may be the trier of fact and may impose sentence upon his clients if conviction results. 435 U.S. at 487

n.11, 98 S.Ct. at 1180 n.11; *cf.* Fed.R.Crim.P. 44(c) (trial judge must inquire as to conflicts); Notes of the Advisory Committee on Criminal Rules, 77 F.R.D. 507, 599–604 (1978) (*re* Rule 44(c)).

6. The Supreme Court stated that the trial judge is not without power to chastise the unscrupulous attorney who misrepresents facts which practically compel the appointment of separate counsel. That power of the trial judge was there recognized as "abundant". *Holloway, supra* at 486 n.10, 98 S.Ct. at 1180 n.10.

different and more searching review is mandated when the defense is silent until the appropriate occasions for objecting have passed. *See Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Cuyler v. Sullivan, supra; Smith v. Bordenkircher*, 671 F.2d 986 (6th Cir. 1982). Relying upon "the good faith and good judgment" of defense counsel to fulfill their ethical obligation and to advise the court in a timely manner of a conflict arising during the course of the criminal proceeding, the Supreme Court has distinguished the situation where defense counsel or defendant does not object and the trial court either knows or reasonably should know that "a particular conflict exists." *Cuyler v. Sullivan, supra* at 347, 100 S.Ct. at 1717. In such circumstances a possible conflict will not result in reversal.[7] When the defendant, individually or through his legal representative, fails to raise his concern for a conflict in a timely fashion, an "actual conflict of interest adversely affect[ing] his lawyer's performance" must be established. *Id.* at 350, 100 S.Ct. at 1719. *See Thacker v. Bordenkircher*, 590 F.2d 640 (6th Cir.), *cert. denied*, 442 U.S. 912, 99 S.Ct. 2827, 61 L.Ed.2d 278 (1979); *United States v. Steele*, 576 F.2d 111 (6th Cir.) *(per curiam), cert. denied*, 439 U.S. 928, 99 S.Ct. 313, 58 L.Ed.2d 321 (1978).

At least two other practical policies support the distinction drawn in *Cuyler v. Sullivan*. The imposition upon the state, which is not heavy when timely objection may be judicially remedied by appointment of separate counsel before trial, increases dramatically once the trial has occurred and appellate or post conviction remedial vehicles are the forum for conflict claims. *See generally, United States v. Mari*, 526 F.2d 117, 120–21 (2d Cir. 1975) (Oakes, J., concurring), *cert. denied*, 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976). Furthermore, the focus of the criminal trial as the single most important stage in the criminal process is also retained [8] by relying upon counsel's

reasonable *pretrial* representations but imposing a more searching examination once the trial has concluded without the conflict having been raised.

▮ Here a proper request was tendered to the trial judge before trial. The court's inquiry focused solely upon delay and its decision on that score was erroneous. Counsel's affirmation of a conflict of interest having remained unimpeached, a denial of Smith's constitutional right to effective assistance of counsel in his state trial is established.

We need not pause long to consider the harm resulting from the ineffective assistance. There is no longer a question whether ineffective assistance of counsel at trial may be considered to be harmless error. It may not. *Cuyler v. Sullivan*, 446 U.S. at 349, 100 S.Ct. at 1718; *Holloway v. Arkansas*, 435 U.S. at 487–91, 98 S.Ct. at 1180–1182; *McKeldin v. Rose*, 631 F.2d 458, 460 (6th Cir. 1980), *cert. denied*, 450 U.S. 969, 101 S.Ct. 1488, 67 L.Ed.2d 619 (1981); *Craig v. United States*, 217 F.2d 355, 359 (6th Cir. 1954).

▮ The rule that harmless error has no application to ineffective assistance claims due to conflict in counsel's interests follows from the elemental observation that attorney's burdened with conflicting considerations are forced to refrain from singleminded pursuit of a single defendant's claims. The harm proceeds not so much from what counsel did in light of the conflict but rather from what counsel did not do. This differs from the normal case where "the error occurs at trial and its scope is readily identifiable." *Holloway*, 435 U.S. at 490, 98 S.Ct. at 1181. No such certainty or concreteness is available when pondering the innumerable issues counsel must consider and decisions counsel must make in representing his client from the pretrial through sentencing. *See generally, Developments, Conflicts of Interest in the Legal Profession*, 94 Harv.L.Rev. 1244, 1381–83 (1981).

---

7. *See United States ex rel. Sullivan v. Cuyler*, 593 F.2d 512, 519 (3rd Cir. 1979), *rev'd.*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

8. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

A harmless error evaluation may not be applied with reference to what occurred at trial since it must focus on what did not occur there and in other stages; it is not "susceptible of intelligent evenhanded application." *Holloway,* 435 U.S. at 490, 98 S.Ct. at 1181.[9]

### Conclusion

■ "The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters." *Holloway v. Arkansas,* 435 U.S. at 490, 98 S.Ct. at 1181. Having found a credible and timely objection based upon conflicting interests which stood unrebutted at petitioner's trial contrary to the Sixth Amendment command, the writ of habeas corpus must issue. The judgment of the district court so directing is AFFIRMED.

---

**9.** The court below, assuming *arguendo* that the trial court had properly aired counsel's conflict claim, found an actual conflict present which adversely affected the performance of petitioner's attorney. 505 F.Supp. at 653. While our view is in concert with the district court's holding that no actual conflict need be shown in this case, we, too, observe an adverse effect on petitioner's counsel wrought by conflicting considerations at his trial. Smith's defense was that he did not know his codefendant and he was elsewhere when the market was robbed. Defense Counsel Sherman recalled at the evidentiary hearing that Allen said he observed Smith at the scene and at the time of the crime. Sherman's examination of Allen is consistent with this view; Allen is not asked whether Smith was in the store until cross-examination by the state.

Furthermore, Smith's defense relied centrally upon credibility. Against his expressed will, he sat at the same table with co-defendant Allen, who admitted being in the store when it was robbed, and was implicated by all but one *res gestae* witness, while Smith was implicated by only one. It can scarcely be doubted that less credence would be given Smith's defense when the same lawyer conferred with each codefendant, and spoke for both in cross-examination of each witness and in a single opening and clos-

ing argument. *See Wiley v. Sowders,* 647 F.2d 642 at 644 n.5 (6th Cir.), *cert. denied,* 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981).

Counsel's ability to bolster Smith's defense suffered from more than just physical circumstances. His ability to highlight the lesser number of adverse witnesses and the lesser incriminating acts to which such witnesses testified to was also impaired by dint of his obligation to codefendant Allen. *See Lowenthal, supra* at 941–46. *See generally, Craig v. United States,* 217 F.2d 355 (6th Cir. 1954); Tague, *Multiple Representation and Conflicts of Interest in Criminal Cases,* 67 Geo.L.Rev. 1075, 1078–80 (1979). That counsel's representation was "not as effective as it might have been," *Glasser, supra,* 315 U.S. at 76, 62 S.Ct. at 467, had he not been required to represent both Smith and Allen is not fairly open to doubt.

The state appellate court found no prejudice arising from the joint representation. *People v. Allen,* 42 Mich.App. 195, 198, 201 N.W.2d 353, 354 (1972). Since we need not assess the adverse effect on the verdict in light of our holding that the trial judge failed to explore the timely conflict objection, the interrelationship between "adverse effect" and prejudice for purposes of 28 U.S.C. § 2254(d) need not be addressed.