Kevin Scott SZILVASY, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–82–00107–CR.

Court of Appeals of Texas,
El Paso.

Nov. 23, 1983.

Rehearing Denied Dec. 21, 1983.

Bruce J. Ponder, El Paso, Diantha Garrett Brennan, Guiberson Law Offices, Houston, for appellant.

Steven W. Simmons, Dist. Atty., El Paso, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and SCHULTE, JJ.

## OPINION

WARD, Justice.

This is an appeal from a jury conviction for murder. The jury assessed punishment at life imprisonment. We affirm.

Co-defendant Andrew Mazur testified on behalf of the State, receiving testimonial immunity. Mazur testified that Appellant stopped at his apartment on the afternoon of May 17, 1981, and invited Mazur to drink beer at the Hondo Pass Lounge. At the lounge, the victim William Steve Simon sat down with Mazur. Appellant approached and accused Mazur of taking his amphetamines from the car. Mazur denied it and both got up to leave. In the parking lot, Appellant pointed to Simon, saying he was one of the people who "ripped off" his "speed." Appellant approached Simon and invited him to go to a nearby convenience store and share in some more beer. Mazur

was driving his own car. Appellant entered the rear seat and Simon sat in the front passenger position. Appellant began to confront Simon with the theft of the amphetamines. Mazur heard the sound of breaking glass in the back seat. He saw Appellant grab Simon's head from behind and cut his throat with a piece of broken glass. Appellant yelled at Mazur to drive to the desert. He drove to an isolated desert area on military property. Simon was limp by the time the car stopped. Mazur and Appellant removed Simon from the vehicle, and Appellant began to strip him. Appellant asked Mazur for a knife or tool. Appellant, then Mazur, put their feet on Simon's throat to insure his death. Appellant obtained a screwdriver from the vehicle and jabbed it into Simon's head until the handle broke. Appellant then expressed a desire to take Simon's penis as a "trophy." With Mazur holding the penis, Appellant severed it with a piece of broken glass and carried it away in a glove. The two returned to El Paso, washed the vehicle in a commercial car wash, and cleaned themselves up at Appellant's apartment. Later they drove to the Hondo Pass Lounge and removed Simon's vehicle. They drove it to Juarez, Republic of Mexico, and left it unlocked with the keys in the ignition. It was never recovered. Several days later Mazur went to the desert area alone to bury the body, but was unable to locate it. On May 25, Mazur was arrested and gave a confession implicating Appellant. The latter was arrested the following morning and gave a confession placing primary responsibility on Mazur. The body was discovered on May 27. Cause of death was the injury to the throat.

The two confessions are virtually identical, merely reversing the roles played by the two co-defendants. Appellant's confession provides more detailed allegations of the origin of the conflict with Simon. Appellant stated that Mazur was the amphetamine seller. Mazur took 1,500 tablets to the lounge to sell. A tentative sale agreement was reached with a fourth person. This individual left to secure the money. In the interim, Simon tried to make a purchase

from Mazur. While this was going on, the first purchaser left the bar and apparently removed the drugs. It was Appellant's understanding that Simon was involved in the theft by intentionally diverting Mazur's attention. According to Appellant, Simon admitted this to Mazur, and when the co-defendants left, Appellant was driving Mazur's vehicle. From that point on, the description of the murder is identical, merely reversing the roles of primary actor and party.

■ Ground of Error No. One alleges that there was insufficient evidence tending to connect Appellant to the commission of the offense to corroborate accomplice Mazur's testimony. *Walker v. State,* 615 S.W.2d 728 (Tex.Cr.App.1981); Tex.Code Crim.Pro.Ann. art. 38.14 (Vernon 1979). Appellant's own confession places him at the scene at the time of the murder. While not sufficient in itself, this is a factor which may be considered cumulatively with other corroborative evidence. *Nelson v. State,* 542 S.W.2d 175 (Tex.Cr.App.1976). Stephanie Narvaez, lounge cocktail waitress, and April Dann, a friend of both subjects, placed them in each other's company immediately before and after the murder. Narvaez testified that Appellant was angry at having his amphetamines stolen, blamed Simon, threatened him, and scuffled with him in the parking lot. April Dann testified that she originally had the 1,500 amphetamine tablets and gave them to Appellant, not Mazur. She saw them in the early morning hours of May 18, after the murder, and observed what appeared to be blood on Appellant's pants. Later that morning Rolando Jaume visited Dann's apartment. Appellant was present and asked Jaume how reliable Mazur was. When Jaume asked why Appellant wanted to know, Appellant replied that he (Appellant) had killed someone the night before. Jaume did not relate this to police until July 1, but we note that the subjects were not even arrested until May 25 and 26, and the body was discovered May 27.

Further corroboration was provided by Neil Odom, an employee at the Flame

Lounge. On May 20, Odom encountered Appellant and Appellant's roommate, Mark Quinn, in the bathroom at the lounge. Quinn told Odom, in Appellant's presence, that Appellant "just cut this guy's dick off, slit his throat, threw him out in the desert, and that we would read about it in the paper in a few days." Quinn threatened that the same thing would happen to Odom's doorman if he tried to eject them from the lounge. Appellant looked at Odom and grinned. The statement was admissible as a tacit admission, Appellant acquiescing in the veracity of Quinn's statement by his silence. *Gibson v. State,* 516 S.W.2d 406, 409 (Tex.Cr.App.1974); *Moree v. State,* 147 Tex.Cr.R. 564, 183 S.W.2d 166 (1944). Neither Jaume's nor Odom's testimony was excludable as hearsay. The statement made to Jaume was an express admission by the Appellant not barred by the hearsay rule. Quinn's statement to Odom, by itself, is hearsay but was offered for the truth of the matter only in conjunction with and subsequent to the tacit admission by Appellant.

■ Eliminating Mazur's accomplice testimony, the evidence still disclosed Appellant's presence at the murder, blood on his pants shortly after the murder, his angry confrontation with the victim immediately prior to the murder, and two subsequent admissions that he committed the offense. Furthermore, Appellant's own confession, while not acknowledging his personal infliction of any injury, renders him liable as a party to the offense. The jury was charged on the law of party responsibility. By his own statement, Appellant thought Mazur intended to threaten or beat up Simon when he lured him to the vehicle. As the glass was placed against Simon's throat, Mazur purportedly ordered Appellant to drive to an isolated desert area. Appellant complied and his statement offers no legally cognizable defense of duress or other compulsion. Appellant then assisted in cleaning Mazur's vehicle and disposing of the victim's car. Viewed in this light, Appellant's confession provided sufficient evidence of party liability, independent of the primary liability arising out of the accomplice testimony. Ground of Error No. One is overruled.

■ Ground of Error No. Two complains of the court's failure to charge the jury on the State's burden to disprove exculpatory evidence which it introduces. Appellant contends that his confession, introduced by the State in its entirety, presents such an exculpatory version. Rather than exculpate, Appellant's confession merely offers an alternative theory of guilt which was available to the State but obviously not the primary interpretation urged by the prosecutors.

If the confession were to be viewed as not establishing party responsibility, the requested charge would still not be appropriate. The rule relied upon by Appellant necessitates that the exculpatory statement amount to an admission of guilt with an assertion which would exonerate the accused if believed. *Swink v. State,* 617 S.W.2d 203 (Tex.Cr.App.1981). If the statement is purely exculpatory and offers no admission, the charge on disproving exculpatory material is not required. Id. Under the facts of this case, Appellant's confession can only be viewed in one of two fashions— either total admission of guilt as a party or total exculpation and no admission of responsibility. Hence, no error is shown in the refusal of the requested charge. Ground of Error No. Two is overruled.

■ Ground of Error No. Three alleges ineffective assistance of counsel under the reasonably effective standard expressed in *Ex parte Duffy,* 607 S.W.2d 507 (Tex.Cr.App.1980). Appellant contends that trial counsel's representation was deficient in investigation and preparation of the case for trial, cross-examination of the State's witnesses, and failure to affirmatively present a defense.

With regard to trial preparation, we note that counsel filed motions for discovery (including exculpatory material) and a bond reduction writ, heard on July 17. Bond was reduced. Appellant moved to sever the trials of the co-defendants, which motion was granted. He requested a pre-sentencing re-

**534**

port. He moved to suppress the confession. He challenged the territorial jurisdiction of the court, based upon the body being located on federal property. He filed motions in limine. Appellate counsel has offered speculation and information outside the record in an effort to demonstrate lack of preparation. Formal rulings on counsel's pretrial motions for discovery do not appear in the record, but appellate counsel's suggestion that they were therefore not pursued is not demonstrated. There is nothing to suggest that trial counsel was not familiar with Mazur's confession. Appellate counsel derives this interpretation from trial counsel's objection when Mazur was called to testify. Counsel's objection was not surprise as to the substance of Mazur's testimony. He objected to the earlier indication by the prosecutor that Mazur would not be called and consequent failure to voir dire the jury on Mazur's identity, involvement or testimony. Trial counsel did cross-examine from Mazur's statement, and it does not appear that it was tendered by the State to counsel at the time of Mazur's testimony. Appellate counsel's footnote attack on a continuance requested and received by trial counsel is outside the record.

An examination of the record of the trial itself discloses that trial counsel lodged appropriate evidentiary objections throughout the trial. He demonstrated deficiencies and inconsistencies in the State's evidence. He adequately demonstrated the arrangement between Mazur and the State as well as its logical influence on his testimony. He objected to the charge and presented an adequate argument to the jury. Counsel challenged his client's confession before the court, but not before the jury. This served a tactical advantage in preserving potential error on the court's part in admitting it and yet preserving its integrity before the jury for purposes of arguing exculpation, or at least mitigation by lesser involvement.

Appellate counsel complains of trial counsel's failure to proceed with defensive evidence and yet presents this Court with no support for a belief that one existed. In summary, we find that trial counsel provided at least reasonably effective assistance

and that the present challenge is unsupported by the record. Ground of Error No. Three is overruled.

The judgment is affirmed.